PEEBLY v. CHILDERS, State Auditor (Regents of University of Oklahoma, Interveners).

No. 14569—Opinion Filed Aug. 18, 1923.

(Syllabus.)

1. Statutes—Veto of Appropriation Bill with Distinct Items.

The act of the Legislature involved herein is a bill making appropriations of money embracing distinct items and the governor's veto power in relation to such bill, or any distinct item thereof, is defined by section 12, art. 6, Williams' Constitution.

2. Constitutional Law—Separate Department of Government.

Except as provided in the Constitution of this state, the three departments of government, legislative, executive and judicial, are required to be separate and dis-

tinct, so that neither shall exercise the functions properly belonging to either of the others.

**3. Statutes—Legislative Act of Governor in Considering Bills.**

While engaged in considering bills which have passed both houses of the Legislature and which are presented to him for approval or disapproval, the Governor is acting in a legislative capacity and not as an executive.

**4. Same—Constitutional Requirements.**

While exercising this function the Governor is a special agent with powers limited by the Constitution and he can only act in the specified mode and can exercise only the granted powers. If he attempts to exercise them in a different mode, or to exercise powers not given, his act will be wholly ineffectual for any and every purpose.

**5. Same—Vitalizing Appropriation Bills — Veto of Items.**

Under section 12, art. 6, Williams' Constitution, which applies in the case at bar, no affirmative action on the part of the Governor is necessary to vitalize an appropriation bill embracing distinct items duly passed by the Legislature. But in order to veto any distinct item of an appropriation bill the governor is required to disapprove the objectionable item in toto.

**6. Same.**

A fair application of the foregoing fundamental principles to the plain provisions of section 12, art. 6, Williams' Constitution leads to the conclusion that the action of the governor in attempting to approve in part and disapprove in part distinct items of the Institutional Appropriation Bill was an unauthorized and futile gesture wholly ineffectual for any purpose.

**7. Disposition of Cause.**

For the reasons stated the judgment of the trial court is affirmed.

Error from District Court, Oklahoma County; William H. Zwick, Judge.

Injunction by R. L. Peebly against C. C. Childers, State Auditor; Regents of University of Oklahoma intervening. Judgment for defendant and intervener, and plaintiff appeals. Affirmed.

Suits & Hall, for plaintiff in error.

George F. Short, Atty. Gen., G. B. Fulton, M. W. McKenzie, and John Barry, Asst. Attys. Gen., for defendant in error.

Paul A. Walker, Raymond A. Tolbert, Elton B. Hunt, for intervener.

Raymond A. Tolbert,, Elton B. Hunt, Charles B. Steele, P. D. Erwin, Jackman A.

Gill, P. D. Sullivan, C. Rose Hume, Paul G. Darbrough, J. B. Sowder, Robert R. Pruett, Thurman S. Hurst, Ray Evans, Paul A. Walker, Alumni of University of Oklahoma, of Counsel.

McPherson & Hannah and W. H. Woods, amici curiae.

KANE, J. This was a suit in equity commenced by the plaintiff in error, plaintiff below, against the defendant in error, defendant below, for the purpose of enjoining the latter as State Auditor from paying out or attempting to pay out any amounts or sums of the moneys appropriated by chapter 33, Sess. Laws 1923, for salaries and maintenance of the University of Oklahoma, for the years 1924 and 1925.

The contention of the plaintiff was that the action of the Governor in approving in part and disapproving in part the salary and maintenance items of the appropriation bill after the final adjournment of the Legislature was in effect a valid disapproval of the items, and therefore no funds whatever were available for salaries and maintenance for the years 1924 and 1925.

Subsequently the Regents of the University of Oklahoma intervened by leave of court. Counsel appearing for the Board of Regents contended that the action of the Governor complained of was unauthorized by the Constitution and the effect of such action was to leave the entire sum appropriated by the Legislature for salaries and maintenance in full force and effect and available for the payment of warrants properly drawn and presented for payment.

George F. Short, Attorney General, G. B. Fulton, M. W. McKenzie, and John Barry, Assistant Attorneys General, appeared for the defendant, the State Auditor, and in his behalf joined counsel for the Regents of the University of Oklahoma in their contention.

These several contentions were considered by the trial court upon demurrer to plaintiff's petition, and the court, after being fully advised in the premises, sustained the demurrer and rendered judgment against the plaintiff and in favor of the defendant and the intervener, to reverse which this proceeding in error was commenced.

The facts out of which this controversy arose may be briefly summarized as follows:

The Legislature duly passed what is generally known as the "Institutional Bill," which provided for an appropriation for salaries for the State University of $700,000

for the year ending June 30, 1924, and $720,000 for the year ending June 30, 1925, and presented it to the Governor for his consideration. The Governor after the final adjournment of the Legislature drew a line with red ink through each of these sums and then wrote under these two items the following words:

"Approved in the sums of $500,000.00 only, $500,000.00 only. J. C. Walton, Governor."

After reducing other items of the bill in the same manner and disapproving other items in full, the Governor appended thereto the following words:

"Approved, this the ninth day of April, 1923, except as to items stricken and specifically disapproved and except as to the following items: Page 2. State University, Norman, Salaries $700,000.00 reduced to 500,000.00 and $720,000.00 reduced to $500,000.00; signed, J. C. Walton, Governor of the State of Oklahoma."

In this court, as in the trial court, counsel for the plaintiff contend that the action of the Governor in drawing a red line through the items of appropriation for salaries and substituting a different amount than that provided by the Legislature and then approving the substitute amount in the manner above indicated constituted a proper exercise of his veto power under section 12, art. 6 of Williams' Constitution, which provides as follows:

"Every bill passed by the Legislature, making appropriations of money embracing distinct items, shall, before it becomes a law, be presented to the Governor; if he disapproves the bill, or any item, or appropriation therein contained, he shall communicate such disapproval, with his reasons therefor, to the house in which the bill shall have originated, but all items not disapproved shall have the force and effect of law according to the original provisions of the bill. Any item or items so disapproved shall be void, unless repassed by a two-thirds vote, according to the rules and limitations prescribed in the preceding section in reference to other bills. Provided, That this section shall not relieve emergency bills of the requirement of the three-fourths vote."

In order to make the precise points of difference between counsel for the contending parties stand out as prominently as possible, we will first lay down without the citation of authorities the applicable preliminary principles of law concerning which counsel agree or over which there is no serious controversy.

Counsel agree that the act of the Legislature involved herein is a bill making appropriations of money embracing distinct items and that the Governor's veto power in relation to such a bill or any distinct item thereof is defined by section 12, art. 6, Williams' Constitution, hereinbefore set out in full.

They also agree that except as provided in the Constitution of this state the three departments of the government, legislative, executive, and judicial, are required to be separate and distinct. so that neither shall exercise the functions properly belonging to either of the others. That while engaged in considering bills which have passed both houses of the Legislature and which are presented to him for approval or disapproval, the Governor is acting in a legislative capacity and not as an executive. That while exercising this function the Governor is a special agent with powers limited by the Constitution and he can only act in the specified mode and can exercise only the granted powers. If he attempts to exercise them in a different mode, or to exercise powers not given, his act will be wholly ineffectual for any and every purpose.

Now, as we understand it, while counsel for plaintiff concede the soundness of these fundamental general principles, they contend that the view they take of the question involved in the case at bar is supported by the decision of this court in the case of Regents of the State University v. Trapp, 28 Okla. 83, 113 Pac. 910, and that if this case is followed in the case at bar, no other conclusion can be logically reached. After quoting at considerable length from the opinion in the Trapp Case, counsel says:

"We submit that there is no escape from the conclusion that the action of the Governor can only have one effect, and that is to place his disapproval upon the items of appropriation for salaries."

We are wholly unable to agree with the conclusion reached by counsel as to the controlling effect of the Trapp Case. We think that when the opinion in the Trapp Case is carefully analyzed and rightly understood, it furnishes a precedent against rather than in favor of counsel's contention.

The appropriation bill involved in the Trapp Case embraced but a single item, and it was held that the Governor's power to approve or disapprove the same was derived from section 11, art. 6, Williams' Constitution, and not from section 12 of the same article.

The first section of the bill appropriated $285,810.23 for the support and maintenance of the State University and the second sec-

tion apportioned the appropriation thus provided by dividing it into many separate and distinct parts for specific purposes. The bill was presented to the Governor less than five days before the final adjournment of the Legislature. The Governor within 15 days after the adjournment of the Legislature reduced many of the distinct sums into which the main item was divided, and, as thus reduced, approved the bill.

The point made in the case was that this action of the Governor was unauthorized and therefore there was not an effectual approval of the bill under that part of section 11, art. 6, supra, which provides as follows:

"No bill shall become a law after the final adjournment of the Legislature, unless approved by the Governor within 15 days after such adjournment."

The precise holding of the court is stated in the second paragraph of the syllabus, as follows:

"Senate Bill No. 268 (Session Laws of Okla. 1909, p. 73) having been presented to the Governor less than five days before the adjournment of the Legislature by which it was enacted, and not having been approved by the Governor within 15 days after the adjournment of said Legislature, never became a law."

It will be observed that by section 11 of the Constitution, which it was held applied in the Trapp Case, an affirmative approval was essential to the bill becoming a law, while under section 12, which applies in the case at bar, no affirmative action on the part of the Governor is necessary to vitalize an appropriation bill embracing distinct items duly passed by the Legislature.

Section 12 directs that the bill shall be presented to the Governor, and that if he disapproves the same or any items of appropriation therein contained, he shall communicate such disapproval to the house in which the bill originated, and specifically provides that all items not disapproved shall have the force and effect of law according to the original provisions of the bill, and that any item or items so disapproved shall be void unless repassed by a two thirds vote. This is the marked distinction between section 11 and section 12.

The Supreme Court of Wyoming noticed the effect of this distinction in considering the Trapp Case in connection with State ex rel. Jamison v. Forsythe, 21 Wyo. 359, 133 Pac. 531. Speaking of section 11, supra, the applicable section in the Trapp Case, the learned Justice who delivered the opinion for the court says:

"There, an affirmative approval was essential to the bill becoming a law, and the approval being a qualified one, and unauthorized in that form, it was held not to amount to an approval at all within the meaning of the Constitution, and not effectual for any purpose. If that be true, we think the same reasons require it to be held that where an affirmative approval is not required, but the bill or the items contained therein will become law unless disapproved, an unauthorized disapproval will be ineffectual. Conceding that where an approval is required to give the act force as law, words qualifying the approval showing a purpose to approve it only in part will nullify the approval and render it ineffectual it does not, we think, reasonably follow that similar words qualifying an approval and showing a purpose to disapprove in part will amount to a disapproval of the entire bill, or of an item in it affected by the attempted disapproval, where such partial disapproval is unauthorized by the Constitution, and the bill or the particular item would become a law unless disapproved."

Likewise reasoning by analogy, we may say, on the authority of the Trapp Case, that, if it be true that a qualified approval is unauthorized under section 11 and is ineffectual for any purpose, then it must follow that a qualified disapproval is unauthorized under section 12 and is ineffectual for any purpose.

The only remaining case relied upon by counsel for plaintiff is Carter v. Rathburn, 85 Okla. 251, 209 Pac. 944.

We are unable to perceive the slightest analogy between the Rathburn Case and the case at bar. In the Rathburn Case the facts were briefly as follows: The Legislature appropriated $1,500 for each of two years to pay the salary of a clerk in the State Examiner's office. The appropriation bill, which embraced distinct items, was sent to the Governor in less than five days before the adjournment of the Legislature, and the Governor, after the final adjournment of the Legislature, ran an ink line through the figures "$1,500" in the column of appropriations for each of the two years 1922 and 1923 and wrote the following words:

"This item disapproved 5-31-21, J. B. A. Robertson, Governor."

The Governor also indorsed on the bill the following words:

"Approved as to all items except those specifically marked disapproved."

The action of the Governor in this case was an unqualified disapproval of the ob-

jectionable item, and the sole contention made was that under section 12, supra, the action of the Governor was invalid and therefore ineffectual for any purpose because it was not performed while the Legislature was in session.

This contention was made upon the authority of May v. Topping, 65 W. Va. 656, 64 S. E. 848, and Woodal v. Darst, 71 W. Va. 350, 77 S. E. 265, 80 S. E. 367, 44 L. R. A. (N. S.) 83, the Supreme Court of West Virginia so holding in construing a constitutional provision identical with our section 12, supra. The Supreme Court denied the writ of mandamus prayed for in the Rathburn Case—

"For the sole reason that this appropriation is not made in strict compliance with the law, this court is of the view that it is an invalid appropriation, not because the Governor has disapproved it after the adjournment of the Legislature, but simply because it has not become a law as required by the provisions of the Constitution."

While this conclusion was not concurred in by a majority of the court, it is obvious from this brief review of the Rathburn Case that the validity or invalidity of the action of the Governor turned on whether section 12 authorized the unqualified disapproval of an item in an appropriation bill containing distinct items after the final adjournment of the Legislature. While in the case at bar, whether the Legislature was in session or not is immaterial, the question being whether section 12 authorizes a qualified disapproval at all. Clearly the Rathburn Case is not in point nor any way helpful in passing on this question.

On the other hand, the Attorney General and his assistants, counsel for the Regents of the University of Oklahoma, and several of the lawyers briefing the case amicus curiae present numerous well-considered cases from other jurisdictions having constitutional provisions similar to our section 12, holding that where the Governor attempts to approve in part and disapprove in part distinct items contained in an appropriation bill, such attempted disapproval is void and without effect, and such items remain valid enactments as though the Governor had expressly approved them or allowed them to become a law without his approval.

The following are some of the cases so holding; State v. Holder, 76 Miss. 158, 23 South. 643; Miller v. Walley, 122 Miss. 521, 84 South. 466; Lukens et al. v. Nye (Cal.) 105 Pac. 593, 20 Ann. Cas. 158; Fulmore v. Lane, 104 Tex. 511, 140 S. W. 411; Callaghan v. Boyce, 17 Ariz. 433. 153 Pac. 773, 783; Fergus et al. v. Russel et al., 270 Ill. 304, 110 N. E. 131, Ann. Cas. 1916, B, 1120.

We have examined the cases cited with considerable care, and find that they are in point and support the proposition of law just stated. These cases constitute the great bulk of case law on the question now under consideration. They are all based upon the theory that under our form of government the Constitution is a limitation upon the power of the legislative department of government, but is to be regarded as a grant of power to the other departments. Therefore, they conclude, neither the executive nor the judiciary can exercise any authority or power, except such as is clearly granted by the Constitution, and where a claim of power is advanced by the executive, the question is not whether the power in question has been granted to the people, but whether it has been granted to the executive, and if the grant cannot be shown, he has no title to the exercise of the power.

This reasoning, we think, is sound as applied to our Constitution, and leads to the conclusion that the action of the Governor in attempting to approve in part and disapprove in part the distinct items of an appropriation bill was without constitutional warrant, and therefore ineffectual for any purpose.

Although, as previously stated, none of the counsel filing briefs herein contend that under section 12 the Governor has power to approve in part and disapprove in part the distinct items of an appropriation bill, we deem it advisable to briefly notice the two cases on which, it is stated in argument, the Governor based his action in the premises.

The first of these cases is State ex rel. Jamison v. Forsythe, Auditor, supra, already noticed in connection with another phase of this case, and the second is the case of Commonwealth v. Barnett, 199 Pa. St. 161, 55 L. R. A. 882. While the opinion of the majority of the court in the Wyoming case does not specifically determine whether the action of the Governor in approving in part certain items in the general appropriation bill and disapproving the remainder was within his authority under the Constitution of that state, we will assume that it did and that the decision is in harmony with the opinion of the Supreme Court in the Pennsylvania case, which squarely holds to that effect.

In our judgment the rulings of the respective courts in these two cases present a fair interpretation of the constitutional provisions under consideration. The difference of the wording between the constitutional provisions considered in these cases and the constitutional provision involved in the case at bar furnishes ample room to clearly distinguish these cases from the case at bar and from the line of cases cited in support of the conclusion hereinbefore reached.

The constitutional provision construed in the Pennsylvania case, which is precisely the same in effect as the constitutional provision involved in the Wyoming case and may be used as a model for both, reads as follows:

"The governor shall have power to disapprove of any item or items of any bill making appropriations of money, embracing distinct items, and the part or parts of the bill approved shall be the law, and the item or items of appropriation disapproved shall be void, unless repassed according to the rules and limitations for the passage of other bills over the executive veto."

A close analysis of the opinion in the Pennsylvania case discloses that the ruling of the court was based upon this provision of the Constitution where, as construed by the court, the words "item" and "part" are used interchangeably and in the same sense. As thus construed, to hold that the Governor may approve in part and disapprove in part separate items of an appropriation bill does no violence to the language used in the constitutional provision. This distinction is noticed and commented on in several of the cases hereinbefore cited with approval. Our section 12 permits of no such construction. It expressly provides that "all items not disapproved shall have the force and effect of law according to the original provisions of the bill."

It seems quite clear to us that when this distinction is considered the two cases last cited are not in joint and that a fair interpretation of our constitutional provision requires us to hold that the action of the Governor in attempting to approve in part and disapprove in part distinct items of the institutional appropriation bill was an unauthorized and futile gesture and wholly ineffectual for any purpose.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, C. J., and McNEILL, COCHRAN, and BRANSON, JJ., concur. HARRISON, NICHOLSON, and KENNAMER, JJ., dissent. MASON, J., not participating.