STATE ex rel. CRABLE et al. v. CARTER, State Auditor.

No. 29794.    June 11, 1940.

*103 P. 2d 518.*

Busby, Harrell & Trice, of Ada, for plaintiffs.

Mac Q. Williamson, Atty. Gen., and Randell S. Cobb and Peyton Ford, Assts. Atty. Gen., for defendant.

OSBORN, J.  This is an original action brought in the name of the State of Oklahoma on relation of A. L. Crable, State Superintendent of Public Instruction, and ten others, hereinafter referred to as relators, against F. C. Carter, as State Auditor, wherein it is sought to obtain a writ of mandamus to require the respondent to allow certain claims of the relators against the State of Oklahoma and to draw warrants against the State Treasury for the payment of said claims. Relators instituted the action in the name of the State of Oklahoma for the benefit of themselves and others similarly situated.

The primary purpose of this action is to test the constitutionality of article 2, ch. 27, Session Laws 1939 (House Bill No. 627), which act is generally referred to as the "Quarterly Budget Law."

It is alleged that relators are state officials and employees. A number of relators are connected with the Department of Education and in the discharge of their official duties incurred traveling expenses for which they filed claims. It is alleged that in the general departmental appropriation bill there was appropriated a fund for traveling expenses for the State Superintendent of Public Instruction and his employees in the sum of $6,400; that there now remains on hand and unexpended out of said fund duly appropriated the sum of $2,-400, which sum is more than sufficient to pay the claims hereinabove referred to; that respondent, as State Auditor, refused to approve said claims and notified the office of the State Superintendent of Public Instruction the reason for the rejection thereof in the following language:

"Claims listed here are rejected for the reason that they are in excess of the amount allocated by the Governor for the first three (3) quarters of the present fiscal year under the authorities of House Bill No. 627, 17th Legislature, and in excess of the amount allocated to April 6, 1940."

It is further alleged that certain claims were filed by officers and employees of the State Board of Agriculture for sums due the owners of cattle which were slaughtered because they were infected by tuberculosis; that notwithstanding an appropriation for reimbursement to the owners of such cattle for the loss occasioned by their destruction, the claims were disallowed. It is alleged upon information and belief that said claims were rejected because the Governor had instructed defendant not to approve any such claims made against

said appropriation, said action being authorized by House Bill No. 627, supra.

The act here attacked is, in full, as follows:

"State Departments—
Quarterly Budgets

"The Governor shall have the power and it shall be his duty to require the Oklahoma Public Welfare Commission and the head of each state department or institution, supported wholly or partly by appropriations from the General Revenue Fund, to file with him thirty (30) days prior to the beginning of each quarter of any fiscal year an estimate of the amounts of money to be distributed or expended by such state department or institution for the ensuing quarter of the fiscal year.

"Upon the filing of such quarterly estimates with him, the Governor shall, by inquiry from the proper officers regarding the collection of taxes, determine whether such tax collections will probably be sufficient in amount to meet the appropriations made by the Legislature for the purposes included in such estimates. After having determined the condition of the state's finances, if the Governor believes that the money to cover such estimates will be available, he shall approve such estimates. If he believes that the money will not be available for such purposes, he may disapprove such estimates, or any items included therein, and direct the officer or head of the department or institution to revise such estimates so as to keep such estimates of expenditures within the estimated revenues.

"Neither the Oklahoma Public Welfare Commission nor the State Auditor shall issue warrants or vouchers in excess of the estimate so approved by the Governor. Neither shall the Board of Public Affairs, the Board of Agriculture, nor any other governing board or any state department or institution, enter into contracts calling for the distribution or expenditure of moneys in excess of such estimates so approved by the Governor.

"If the head of any state department or institution shall refuse to file such estimate, the Governor shall so certify to the State Auditor and he shall issue no warrants in favor of such department or institution until such estimate has been filed and approved by the Governor, as provided herein."

The Attorney General, appearing in behalf of respondent, State Auditor, contends that the above act constitutes a valid exercise of legislative power, in that we have heretofore approved appropriations by the Legislature of public funds based upon the happening of a certain contingency. The case of State ex rel. Murray v. Carter, 167 Okla. 473, 30 P. 2d 700, is relied upon. In that case the court was concerned with the validity of two appropriations; one made to the State Penitentiary at McAlester, "to be used in case of an increased number of prisoners"; the other to the Eastern Oklahoma Tubercular Sanitorium, "to be used in case of an increased number of patients." The authorities from the various jurisdictions were carefully reviewed and it was pointed out that the great weight of authority supports appropriation of public funds based upon the happening of a certain contingency. See, also, Gibson Products Co. v. Murphy, 186 Okla. 714, 100 P. 2d 453. An examination of all the authorities cited by the Attorney General on this point discloses that the contingencies dealt with were in regard to the necessity for expenditure of the funds conditionally appropriated or to the distribution thereof based upon the needs for the expenditure of such funds. We have found no case holding that appropriations of funds may be made contingent upon the collection of revenues sufficient to meet such appropriations within the fiscal year for which they are made.

Section 12, art. 6, of the Constitution is as follows:

"Every bill passed by the Legislature, making appropriations of money embracing distinct items, shall, before it becomes a law, be presented to the Governor; if he disapproves the bill, or any item, or appropriation therein contained, he shall communicate such disapproval, with his reasons therefor, to the house in which the bill shall have originated, but all items not disapproved shall have the force and effect of law

according to the original provisions of the bill. Any item or items so disapproved shall be void, unless repassed by a two-thirds vote, according to the rules and limitations prescribed in the preceding section in reference to other bills; Provided, that this section shall not relieve emergency bills of the requirement of the three-fourths vote."

This provision of the Constitution, in addition to defining the veto power of the Governor, insofar as appropriations are concerned, fixes the status of appropriations passed pursuant thereto by providing that "all items not disapproved shall have the force and effect of law." If there existed any doubt as to whether or not the validity of an appropriation was conditional upon the collection of revenues sufficient to meet the same within the fiscal year for which the appropriation was provided, the same was put at rest by our decision in the case of State ex rel. Phillips v. Carter, 186 Okla. 571, 99 P. 2d 1025, wherein we held that the prerogative of making appropriations lies with the Legislature and upon it lies the responsibility to make the revenues meet the appropriations; that those are its constitutional functions, and neither the administrative officers charged with the receipt and disbursement of the revenues nor the courts can annul valid appropriations made; that the revenues of the state provided for and in the process of collection may be considered as constructively in the treasury and may be appropriated and treated as though actually and physically there.

Having determined that the appropriations made in the departmental appropriation bill are valid and binding and have the force and effect of law, the question arises whether or not the Legislature may delegate to the Governor, under certain conditions, the power to annul or veto, in whole or in part, any item contained in such appropriation bill. Petitioners urge that such question was settled by this court in the case of State ex rel. Hudson v. Carter, 167 Okla. 32, 27 P. 2d 617, 91 A. L. R. 1497. In that case the court was concerned with an appropriation to the Corporation Commission and a provision inserted in the departmental appropriation bill providing that said funds were "to be expended by and with the approval of the Governor." Therein it was said:

"* * * A provision requiring the approval of the Governor of the expenditure of such an appropriation is void for three reasons: First, there is no authority of law for the Governor to approve an expenditure of money appropriated for the purpose of enabling the Corporation Commission to perform the constitutional duty required to be performed by it under the provisions of section 29, article 9, supra; second, the attempt to authorize the Governor to exercise such power is void under the provisions of section 56, article 5, supra; and, third, because the Legislature is without authority to confer the power upon the Governor to do indirectly a thing which the Governor could not be directly empowered to do, that is, to reduce an item in an appropriation bill. We held to that effect in Peebly v. Childers, State Auditor, 95 Okla. 40, 217 P. 1049. See, also, Regents of State University v. Trapp, Auditor, 28 Okla. 83, 113 P. 910, and Carter, State Auditor, v. Rathburn, 85 Okla. 251, 209 P. 944.* * *"

Section 56, art. 5, of the Constitution provides that "the general appropriation bill shall embrace nothing but appropriations, * * *" and respondent urges that the proviso contained in the departmental appropriation bill that the funds were to be expended by and with the approval of the Governor was clearly unconstitutional for that reason and that reference in the opinion to the extension of the veto power of the Governor to reduce an item in the appropriation bill was dictum, since the same was unnecessary to a decision of the question there presented, whereas petitioners contend that said reference is not dictum, but merely a cumulative reason why such provision was unconstitutional.

In the case of Peebly v. Childers, supra, it is said:

"Counsel agree that the act of the Legislature involved herein is a bill

making appropriations of money embracing distinct items and that the Governor's veto power in relation to such a bill or any distinct item thereof is defined by section 12, art. 6, Williams' Constitution, hereinbefore set out in full.

"They also agree that except as provided in the Constitution of this state the three departments of the government, legislative, executive, and judicial, are required to be separate and distinct, so that neither shall exercise the functions properly belonging to either of the others. That while engaged in considering bills which have passed both houses of the Legislature and which are presented to him for approval or disapproval, the Governor is acting in a legislative capacity and not as an executive. That while exercising this function the Governor is a special agent with powers limited by the Constitution and he can only act in the specified mode and can exercise only the granted powers. If he attempts to exercise them in a different mode, or to exercise powers not given, his act will be wholly ineffectual for any and every purpose."

Since the power of the Governor to veto items in an appropriation bill is limited by the Constitution, any attempt on the part of the Legislature to enlarge the exercise of that power and to change the specified mode or manner of its exercise would contravene the constitutional provision fixing the limit of such power. It therefore appears that the statement made in the case of State ex rel. v. Carter, supra, that the Legislature is without authority to empower the Governor to reduce an item in the appropriation bill is fundamentally correct and is controlling of the question here presented.

This conclusion, as we view it, is in harmony with our fundamental concept of government relating to the division of powers. The responsibility of preventing the excessive expenditure of such funds rests primarily upon the Legislature, which can refuse to appropriate such excess funds; but if appropriated, the responsibility thereupon shifts to the Governor, who by the exercise of his constitutionally granted veto power, at the time and in the manner prescribed and limited by the Constitution, can prevent such excessive expenditure. However desirable it may be to prevent the expenditure of funds in excess of available revenues, the courts must scrupulously maintain the powers delegated to the legislative and executive branches of government, but at the same time must as carefully maintain the constitutional restrictions imposed upon the exercise of those powers, for herein lies the safeguard of representative government. We find nothing in our Constitution which indicates that the framers thereof contemplated that the Governor might be granted a continuing veto power which, under any circumstances or conditions, might be exercised long after the Legislature has adjourned.

Numerous other contentions are made by the Attorney General attacking the regularity of this proceeding. There is involved here a public question. The orderly conduct of the state's business depends upon a prompt decision of the primary issue. We have examined the contentions of the Attorney General and the authorities cited with regard to the procedural questions, and find that we are violating no precedent in proceeding to determine the constitutionality of this act in this proceeding.

The Attorney General attacks the validity of a number of the claims herein involved. We do not attempt to pass upon the validity of any or all of said claims, since that function devolves upon the State Auditor, and since he assigned as his reasons for rejecting said claims the act of the Governor pursuant to the act of the Legislature hereinabove considered. Suffice to say that, from the record before us, some of the claims herein appear to be valid, but we shall not herein prevent proper consideration of said claims by the State Auditor upon a further presentation of the same. To that end we shall withhold the issuance of a peremptory writ of mandamus in the belief that the State Auditor will audit said claims and allow such

items as are proper charges against public funds.

Writ granted and withheld.

BAYLESS, C. J., and RILEY, CORN, DAVISON, and DANNER, JJ., concur. WELCH, V. C. J., and HURST, J., concur in part and dissent in part. GIBSON, J., absent.

———

HURST, J. (concurring in part and dissenting in part). I concur in the conclusion reached by the majority opinion that the Quarterly Estimate Law is unconstitutional. It does not follow, however, that mandamus should issue. It is clear that warrants have already been issued far in excess of the revenue that will accrue to the general revenue fund for this fiscal year. The issuance of additional warrants that may be allowed under the majority opinion will increase the deficit by more than a million dollars, which, in my opinion, cannot be done without doing violence to the debt limitation provisions of the Constitution. My views on this subject have been stated in Re Treasury Note Indebtedness (1939) 185 Okla. 10, 90 P. 2d 19, and in Phillips v. Carter (1940) 186 Okla. 571, 99 P. 2d 1025, and need not be repeated here.

I therefore dissent to the conclusion that mandamus should issue.

WELCH, V. C. J., concurs in the views of Justice HURST.