** Part II of Part II ** Thus, the rule on delegation of legislative authority in New Jersey is that legislative authority may be delegated to an executive officer so long as it does not enhance the executive power to the extent that such power threatens the security against aggregated power and that it is assumed that the Legislature in delegating legislative authority finds that there is no such threat unless such finding is plainly wrong. The rule of the Brown case, supra, on delegation of legislative authority, which appears to be the only statement of that kind in the country, utilizes reasoning that is not consistent historically with the reasoning on similar questions by the Oklahoma Supreme Court. From that case it is clear that New Jersey does not follow the same rule concerning delegation of legislative authority as that historically followed in Oklahoma. Further, a review of the New Jersey Constitution indicates that it does not contain provisions similar to those embodied in the Oklahoma Constitution, relating to the vesting of executive authority or power, enactment of laws, and the right of initiative and referendum. The latest case found touching upon reorganization of the executive branch of state government is State, ex rel. Farmers Electric Cooperative v. State Environmental Improvement Authority, 518 S.W.2d 68 (Mo. 1975). This case involved a constitutional challenge of the statutory powers of the State Environmental Improvement Authority. In this connection, it was contended that the Omnibus State Reorganization Act of 1974, pages 530 through 553, Laws of Missouri 1974, was unconstitutional under the State Constitution because the Act assigned the Authority to the Department of Consumer Affairs, Regulation and Licensing, although its functions are more germane to the Department of Natural Resources. In response to this contention, the court stated at page 76 of the opinion as follows: ". . . The status and powers of the Authority do not rest on the validity of such a peripheral statute." It was also contended that the 1974 Reorganization Act violated the one subject rule contained in Section 23 of Article III of the Missouri Constitution and that the same is confusing and fails to provide guidance to the Authority. In responding to this contention, the court stated at page 76 of the opinion as follows: "House Bill No. 1797 had one general subject, i.e., the functional reorganization of the . . . executive branch. Nothing therein dealt with other matters in violation of the constitution. The alleged confusion suggested in Point X is not present absent the extremely strained interpretation thereof made by relator. Neither point has merit." Thus, the State Environmental Improvement Authority case, supra, did not involve the question present herein of delegation of authority by the Legislature to the Governor to reorganize agencies, boards or commissions of the executive branch. In this respect, Section 12 of Article IV of the Missouri Constitution, after the 1972 amendment thereto, lists thirteen departments of the executive branch, allows the Legislature to create one department, and provides that unless discontinued all present agencies "shall be assigned by law or by the Governor as provided by law to the office of administration or to one of the thirteen administrative departments to which their respective powers and duties are germane." Pursuant to the 1972 constitutional amendment to Article IV of the Missouri Constitution, the Omnibus State Reorganization Act of 1974 was enacted. This Act is a very comprehensive and detailed piece of legislation. The Act provides that transfers of functions provided in the Act are to be effected by executive order of the Governor "in accordance with the provisions of this act". The specific transfers of functions or changes in the executive branch are embodied in the Act itself, as authorized by the Missouri Constitution after the 1972 amendment. Of course, this is not the situation presented herein. There is no constitutional provision in Oklahoma authorizing reorganization by action of the Governor "as provided by law", and no comprehensive reorganization act adopted pursuant to such constitutional authorization. In any reorganization of the executive branch it is generally recognized that the Governor should play a key role. Missouri, along with Alaska, California, Kansas, Maryland, Michigan, North Carolina and South Dakota have recognized this need and have constitutionally granted authority concerning reorganization to the Governor, either originally in the State Constitution or by subsequent constitutional amendment. See, Alaska Constitution, Art. 3, 23; California Constitution, Art. 5, 6; Kansas Constitution, Art. 1, 6; Maryland Constitution, Art. 2, 24, Michigan Constitution, Art. 5, 2; North Carolina Constitution, Art. 3, 5; and South Dakota Constitution, Art. 4, 8. These constitutional grants of authority to the Governor in these states have eliminated the constitutional questions now presented in Oklahoma, which arise as the result of the authority being granted by statute rather than constitutional amendment. In applying the rules set forth in the Russell case, supra, and the Oklahoma decisions on delegation of legislative authority, it is clear that if it were shown that an Executive Order, issued pursuant to Subsection A of Section 5, Chapter 30
O.S.L. 1975, did in fact seek to have "the force of law" (Russell case), or "curtail(s) the powers and duties" of an agency, board or commission (Schmitt case), or "amend" existing statutes (Casualty case and ABC Board case), which Executive Order becomes effective without legislative action within a fixed time period, this would not simply be the determination of "some fact or state of things upon which the law makes its own operation dependent" (Isaacs case); but would, in fact, be a determination of "the policy of the law" (Associated Industries case), which includes the amendment, modification or repeal of existing statute, a lawmaking function vested in the Legislature and reserved to the people by Section 1, Article V of the Oklahoma Constitution. CONSTITUTIONAL PROCEDURE FOR ENACTING LAWS As pointed out by the court in Opinion of Justices, supra, if the authority granted to the Governor by the Act were exercised in such a manner so as to constitute lawmaking authority, including the amendment, repeal or modification of statute, the same would amount to a reversal of the democratic process required by the Constitution, for under it the Governor would be proposing and taking legislative action rather than approving or disapproving action already taken. In this respect, lawmaking authority is constitutionally prescribed by Article V, Section 1 of the Oklahoma Constitution, consistent with the separation of powers provision of Section 1 of Article IV. Article V, Section 1 of the Oklahoma Constitution prescribes the only method of enacting laws in Oklahoma: (1) by vesting lawmaking authority in the Legislature and (2) by reserving the right of initiative and referendum to the people. The Section reads as follows: "The Legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature." (Emphasis added) For the reasons stated herein, the exercise of authority delegated to the Governor under Subsection A of Section 5, Chapter 30 O.S.L. 1975, 74 O.S. 1545 [74-1545] (1975), in a manner so as to constitute lawmaking, which would include amendment, repeal or modification of existing statute, would be the exercise of legislative authority in violation of Article IV, Section 1 and Article V, Section 1 . Also, the exercise of this lawmaking function in such a manner would be contrary to the lawmaking procedures set forth in Sections 34, 35, and 57, and 58 of Article V. Section 34 of Article V reads as follows: "Every bill shall be read on three different days in each House, and no bill shall become a law unless, on its final passage, it be read at length, and no law shall be passed unless upon a vote of a majority of all the members elected to each House in favor of such law; and the question, upon final passage, shall be taken upon its last reading, and the ayes and nays shall be entered upon the journal." (Emphasis added) Section Article V, Section 35 reads as follows: "The presiding officer of each House shall, in the presence of the House over which he presides, sign all bills and joint resolutions passed by the Legislature, immediately after the same shall have been publicly read at length, and the fact of reading and signing shall be entered upon the journal, but the reading at length may be dispensed with by a two-thirds vote of a quorum present, which vote, by yeas and nays, shall also be entered upon the journal." (Emphasis added) Article V, Section 57 reads as follows: "Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof." (Emphasis added) The pertinent part of Article V, Section 58 reads as follows: "No act shall take effect until ninety days after the adjournment of the session at which it was passed . . . unless, in the case of emergency, to be expressed in the act, the Legislature, by a vote of two-thirds of all members elected to each House, so directs." (Emphasis added) PRESERVATION OF RIGHT OF INITIATIVE AND REFERENDUM Further, the exercise by the Governor of authority delegated by Subsection A of Section 5 of the Act, in a manner so as to constitute lawmaking authority, including the amendment, repeal or modification of statute, would also affect the peoples' right of initiative and referendum expressly reserved to them by Section 1, Article V of the Constitution. The peoples' right of initiative and referendum has been carefully preserved by the courts in Oklahoma. In the case of Sam Gibson, et al. v. James Bullard, Secretary of State,417 P.2d 295 (1966), the court stated this right as "sacred": "The right to petition for a vote of the people by Initiative and Referendum provided by Art. V, 2, of the Constitution of Oklahoma is a sacred right to be carefully preserved . . . These rights are not to be lightly brushed aside on mere technicalities." (Emphasis added) In the case of Boswell v. State, 74 P.2d 947 (1937), the court stated: "Section 1, Article V, of the Constitution vests the legislative authority of this state in the Legislature, but by virtue of the same section the people reserved to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also power at their own option to approve or reject at the polls any act of the Legislature." In considering the special fund doctrine and state fiscal affairs, the court dealt with the prohibition against the Legislature enacting "unrepealable" legislation in view of the right of initiative and referendum, and stated: "To sustain the validity of the act involved herein would be to hold that the Legislature is empowered to enact irrevocable and unrepealable legislation, thereby not only depriving a future legislative body of its right to repeal the law levying the tax pledged to the payment of the outstanding notes, but likewise denying the people of this state the right to repeal the levy of the tax or to provide for the distribution of the revenues arising therefrom to another or different purpose . . . These provisions of the Constitution guarantee that the power of a subsequent legislative body either to acquiesce or repeal shall always be existent." (Emphasis added). As applied to reorganization by Executive Order, if the order constitutes "lawmaking", would not the order become irrevocable or unrepealable since it would not exist as an act of the Legislature, i.e., a statute; and thus, is it not also out of the reach of the public since the initiative and referendum can only amend or repeal statutes enacted by the Legislature, not executive or administrative orders? In addition, Chief Justice Williams stated in the case of Allen v. Burkhart, 377 P.2d 821
(1963): "In our State Constitution, the people vested in the Legislature the Legislative authority of the State. Art. V, 1. But, in the same section, they reserved the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature. "Also, in Article XXIV, Section 3, the people again expressed their right to amend the Constitution by initiative petition therefor." There is discussion of administrative and executive action with relationship to the power of the referendum in Brazell v. Zeigler, 110 P. 1052 (1910). The court stated in the syllabus: "The power of the referendum reserved to the people of the state by the Constitution (Article V, Section 1), and further reserved in section 5 to the legal voters of every county in the state as to all local legislation or action in the administration of county government, held applicable only to laws or legislative acts as distinguished from administrative or executive action." (Court's emphasis) It is obvious from the foregoing cases that the framers of our Constitution felt that it was not only necessary but mandatory that the peoples' right to govern themselves effectively should not be denied. This right of initiative and referendum is a safeguard for the people of Oklahoma against publicly unacceptable legislative acts. The issuance of an Executive Order that is the equivalent of a legislative act effectively limits the constitutional authority of the Legislature to enact laws through the prescribed constitutional procedure, and the authority of the people to effect laws through the constitutionally reserved right of initiative and referendum. Based on the foregoing authorities, the provision contained in Subsection A of Section 5, Chapter 30 O.S.L. 1975, 74 O.S. 1545 [74-1545] (1975), authorizing the Governor to reorganize by Executive Order statutory agencies, boards and commissions, cannot constitutionally be construed to encompass lawmaking authority, which would include the amendment, repeal or modification of the statutory powers, duties or functions of agencies, boards and commissions. Under Article V, Section 1 of the Oklahoma Constitution, the lawmaking authority in Oklahoma is exclusively vested in the Legislature with the right of initiative and referendum reserved to the people. Concerning your second question, Article V, Section 55 of the Oklahoma Constitution provides as follows: "No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law . . . and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum." (Emphasis added) Article V, Section 56 provides as follows: "The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the State, and for interest on the public debt . . . All other appropriations shall be made by separate bills, each embracing but one subject." The foregoing constitutional provisions have been construed in Wells v. Childers,165 P.2d 371 (1945); State, ex rel. Crable v. Carter, 103 P.2d 518
(1940); and State, ex rel. Hudson v. Carter, 27 P.2d 617
(1933). In the earliest of the cases cited above, State, ex rel. Hudson v. Carter, supra, the court held that the Legislature was without authority to confer upon the Governor the power to reduce the amount of an appropriation. In so holding, the court stated at page 626 of the opinion as follows: "Had the Governor attempted to reduce the amount of the appropriation made for the use of the Corporation Commission, his action would have been ineffective under the provisions of our Constitution. The Legislature is without authority of law to confer upon the Governor the power to reduce the amount of an item of an appropriation. It cannot authorize him to do indirectly what he is prohibited by the Constitution from doing directly." (Emphasis added) Likewise, in State, ex rel. Crable v. Carter, supra, the court following the previous holding in State, ex rel. Hudson v. Carter, supra, again held that the Legislature was without authority to empower the Governor to reduce an item in an appropriation bill. In so holding the court stated at page 521 of the opinion as follows: "Having determined that the appropriations made in the departmental appropriation bill are valid and binding and have the force and effect of law, the question arises whether or not the Legislature may delegate to the Governor, under certain conditions, the power to annul or veto, in whole or in part, any item contained in such appropriation bill. . . . "Since the power of the Governor to veto items in an appropriation bill is limited by the Constitution any attempt on the part of the Legislature to enlarge the exercise of that power and to change the specified mode or manner of its exercise would contravene the constitutional provision fixing the limit of such power. It therefore appears that the statement made in the case of State, ex rel. v. Carter supra, that the Legislature is without authority to empower the Governor to reduce an item in the appropriation bill is fundamentally correct and is controlling of the question here presented." (Emphasis added) In Wells v. Childers, supra, it was held that the Legislature may not create a fund, designate it an appropriation and delegate determination of the objects of expenditure from it to any executive or administrative officer at his discretion. The court stated at page 376 of the opinion as follows: ". . . As a matter of fundamental principle, the Legislature may not create any fund, designate it an appropriation, and delegate determination of the objects of expenditure to any executive or administrative officer at his discretion. So to do not only would violate the Constitution (Art. V, Sec. 55), requiring the distinct specification of the object to which it may be applied; additionally, such legislative authority sought to be delegated would violate Sec. 1, Art. IV, Constitution, by which the government is divided into three separate distinct departments and in which it is provided that neither shall exercise the powers properly belonging to either of the others." (Emphasis added) It should be noted that the constitutional authority of the Governor to veto any or all items contained in an appropriation bill must be exercised within the constitutionally prescribed time following passage of such bill by the Legislature. Based on the foregoing, the provisions contained in Subsection A of Section 5, Chapter 30 O.S.L. 1975, 74 O.S. 1545 [74-1545] (1975), authorizing the Governor to reorganize by Executive Order agencies, boards and commissions, cannot constitutionally be construed to include any reduction or transfer of existing appropriations to agencies, boards and commissions of the state. In view of the answer to your first question, we do not reach your third question. In view of the answer to your first question, we do not reach your fourth question. Your fifth question is answered in the answer to your first question. It is, therefore, the opinion of the Attorney General that your questions be answered as follows. Chapter 30 O.S.L. 1975, codified at 74 O.S. 1541 [74-1541] through 1546, would be constitutional, except that the delegation of authority to the Governor, contained in Section 1545 thereof, to implement recommended plans of reorganization by Executive Order, cannot constitutionally be construed to encompass lawmaking authority, which would include the amendment, modification or repeal of the statutory powers, duties and functions of agencies, boards and commissions contrary to Section 1, Article IV, Sections 1, 34, 35, 57 and 58, Article V, and Section 1, Article VI of the Oklahoma Constitution. The provisions of Subsection A of Section 5, Chapter 30 O.S.L. 1975, codified at 74 O.S.Supp. 1975, 1541 through 1546, delegating authority to the Governor to implement recommended plans of reorganization, cannot constitutionally be construed, under Sections 55 and 56, Article V of the Oklahoma Constitution, to include the reduction or transfer of existing appropriations to statutory agencies, boards and commissions of the state. (Gerald E. Weis)