We are in receipt of your request for an official Attorney General's opinion wherein you ask the following question: "Whether any portion of this year's bill to fund common schools, HB 1140, is unconstitutional by reason of the fact that it may be general legislation rather than specifically appropriative language?" The bill in question, HB 1140 First Regular Session of the Thirty-seventh Legislature, Laws 1979, c. 282, codified in part as 74 O.S. 285 [74-285](46) (1979) for purposes of analysis can be divided into three parts, appropriation's sections, appropriation-related sections, and general legislation. Section 1 through 6 appropriate monies from current revenues and surplus of three funds maintained in the State Treasury. All six sections make appropriations to the State Board of Education "to accomplish the support of public school activities" in the State of Oklahoma. Section 8 appropriates $240,000 from the General Revenue Fund to the State Board of Education "to assist in defraying the cost of rebuilding the school building destroyed by fire" in six enumerated school districts. Sections 7, 9 through 22, 23 A and 24 through 28 are appropriation related sections. Each specifies the amount and/or manner in which the monies appropriated in Sections 1 through 6 are to be expended. While some of these appropriation-related sections amend prior law, the law amended dictates the formula by which appropriated funds are to be disbursed. All the remaining provisions of HB 1140 are general laws relating to the management and regulation of public schools. Section 38 is a severability clause and Section 39 is an emergency clause. The Oklahoma Constitution, Article V, Section 56 defines the general and separate appropriation bills as follows: "The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the State, and for interest on the public debt. The salary of no officer or employee of the State, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary, shall have been already provided for by law. All other appropriations shall be made by separate bills, each embracing but one subject." Article V, Section 57 further provides in pertinent part: "Every act of the Legislature shall embrace but one subject which shall be clearly expressed in its title, except general appropriation bills . . . ." Our discussion must necessarily commence with an understanding of what is "the general appropriation bill" which is the subject of Article V, Section 56. Your question assumes that "the general appropriation bill" referred in Article V, Section 56, is a nonspecific term meaning any bill making multiple appropriations for various unrelated subject matters. A general appropriation bill is not merely "general legislation" making appropriations. The term "general appropriation bill" refers to a specific kind of legislation with definite characteristics and of only limited purpose. At statehood, the Legislature meeting on the biennium would make provisions in one bill for defraying the fixed expenses of the three branches of government, i.e., wages and salaries of state officers and employees, the expenses of their offices, and related costs of day-to-day operations. This one bill was known as the general appropriations bill. It was to provide money for nothing new either as to programs or personnel. Its sole purpose was to fund the already existing, known, relatively fixed expenses of the principle branches of government. Anything original, whether be it appropriation or otherwise, could not be addressed in the general appropriation bill but had to be the topic of separate legislation "embracing but one subject" See Att'y Gen. Op. No. 77-202. The foregoing definition of "the general appropriation bill" has been consistently adhered to by the State Supreme Court on every occasion the matter was directly or collaterally called into question. The earliest of these cases was Bryan v. Menefee, 21 Okl. 1, 94 P. 471 (1908). In Bryan v. Menefee, supra, the Court discussed the origin and purpose of Article V, Section 56, thereafter the Court said: "It was evidently the intention of the constitutional convention that the general appropriation bill, excepting interest on the public debt, should embrace nothing but items for the executive, legislative, and judicial departments, covering the officers and employees thereof, where the office or employment had already been provided for, and the salary or compensation fixed by law prior to the passage of such general appropriation bill. An appropriation to cover compensation of employees sic in the executive, legislative, or judicial departments, not prior to that time authorized by law and their compensation also fixed, can only be enacted as a separate appropriation bill embracing but one subject." Bryan v. Menefee, supra, was one of the authorities relied upon in State ex rel. Hudson v. Carter, 167 Okl. 32, P.2d 617 (1933), wherein the Court had before, it for review the general appropriation bill for the Fourteenth Legislature (May 6, 1933). In Hudson v. Carter, supra, a claim for wages was contested, in part, on the grounds the appropriation from which the claims were to be paid was not a permissible appropriation in the general appropriation bill as defined by Article V, Section 56. The holding of the Court in Hudson v. Carter, supra, so far as it is pertinent to our discussion stated: "We, therefore, conclude that no money shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; that the State Auditor is not authorized to issue a warrant and the State Treasurer is not authorized to pay any warrant against the state, or any of its funds, or any of the funds under its management, until an appropriation by law has been made for the purpose for which the claim was made or warrant issued; that the general appropriations for the expenses of the executive, legislative, and judicial departments of the state, and for interest on the public debt; that no appropriation shall be made in the general appropriation bill for any officer or employee, regular or special; of the executive, legislative, or judicial departments of the state, unless provision shall have been made for such employment and the amount of salary therefor fixed by law prior to the enactment of the general appropriation bill, . . . ." A comparison of the previously discussed provisions of HB 1140 with the characteristics and criteria outlined by the Court in the Bryan v. Menefee and Hudson v. Carter decisions quickly leads to the conclusion that HB 1140 is not "the general appropriation bill" described in Article V, Section 56. Our conclusion in this regard is not unique. See Atty. Gen. Op. No. 77-202. There are several reasons for concluding HB 1140 is not a Article V, Section 56 general appropriations bill. first, it is confined to appropriations for public school activities only. Second, the bill appropriates money for other purposes in addition to the fixed expenses of a state agency. Third, the bill contains general legislation. Although we may assume arguendo, HB 1140 embraces but one subject, i.e., the support and accomplishment of public school activities, it cannot be neatly categorized as a separate bill "embracing but one subject" as described in the last sentence of Article V, Section 56 and the first part of Article V, Section 57. This is due to the appropriation in HB 1140 of money for the fixed expenses of the subject state agency. The Constitution anticipates such an appropriation for the fixed expenses of a portion of the executive department of government would be encompassed within the general appropriations bill, while all other appropriations would be by separate bill. HB 1140 is a hybrid legislative vehicle. It conforms to part but not all of the characteristics of a Article V, Section 56 general appropriations bill and part but not all of an Article V, Section 57 separate bill. The question is whether such an enactment is constitutionally permissible. We conclude it is not. The Oklahoma Supreme Court has expressly endorsed the proposition that "under our form of government, the Constitution is a limitation upon the power of the legislative department of government, but is to be regarded as a grant of power to the other departments." Peebly v. Childers, 95 Okl. 40,217 P. 1049 (1923). A review of Article V of the Oklahoma Constitution confirms that it is primarily a list of restraints imposed upon the Legislature's otherwise unbridled exercise of legislative authority. Of primary concern are three closely related sections, Article V, Section 55, Article V, Section 56 and Article V, Section 57. Article V, Section 55 prohibits the expenditure of any money from the Treasury of the State "except in pursuance of an appropriation by law." Article V, Section 56 states how appropriations are to be made. The general appropriations bill provides for the expenses of the three principle departments of government and "all other appropriations" must be made by separate bills conforming to the requirements of Article V, Section 57. Article V, Section 57 requires that every act of the Legislature, appropriations and non-appropriations alike, "shall embrace but one subject" with the sole exception of general appropriation bills as may be passed pursuant to Article V, Section 56. From statehood to 1955, every regular session of the Legislature, with the exception of the Twenty-first Legislature meeting in 1949, enacted as one bill a general appropriation bill providing for the expenses of the three departments of State. The general appropriations bills of the Twenty-second 1951 and Twenty-third 1953 Legislatures were entitled: "AN ACT making appropriations for the expenses of the executive, legislative and judicial departments of the State, in accordance with the provisions of Article V, Section 56, of the Constitution of the State of Oklahoma . . . ." The Twenty-fourth Legislature meeting for the biennium in 1955 undertook to appropriate for the fixed expenses of the three principle departments of government and their agencies in a series of separate bills. Each separate bill was similarly structured. One section made a lump sum appropriation, a second scheduled the expenditure of funds appropriated, a third made the appropriation subject to fiscal year limitations or exempted the appropriation from fiscal year limitations, and the fourth section was a repealer or in some instances a severability clause. Although there was some variance from the foregoing structure of the bills, there was no material departure from the outlined scheme of the legislation. Over the years the legislative format for funding the fixed expenses of government has evolved from a single general appropriations bill encompassing all such appropriations, to separate appropriations bills treating the former parts of the general appropriations bill individually with no modification of content, to the current hybrid legislation represented by HB 1140. The defect of the form of legislation which HB 1140 typifies is that it is neither the general appropriation bill nor a separate bill. Perhaps more to the point, HB 1140 attempts to accomplish in one bill, functions the Constitution requires be addressed in different vehicles. HB 1140 appropriates for the fixed expenses of the State Board of Education and the State Department of Education. Additionally, the same bill expands state aid, raises teacher salaries, funds new programs and enacts general laws not related to appropriations. It is in the joinder of these functions that HB 1140 violates Article V, Section 56. To view the requirements of Article V, Section 56 otherwise would be to permit the Legislature by enacting only separate bills embracing but one subject to circumvent the prohibitions of Article V, Section 56. Such a practice has impact not only upon the legislative processes but also effectively diminishes the Article VI, Section 12 line item veto power of the Governor. See Regents of State University v. Trapp, 28 Okl. 83, 113 P. 910 (1911); Carter v. Rathburn,85 Okl. 251, 209 P. 944 (1922); Peebly v. Childers,95 Okl. 40, 217 P. 1049 (1923). We note the existence of a later expression of the Supreme Court on the impact hybrid legislation of the sort here reviewed has on the Article VI, Section 12 veto power. State ex rel. Wiseman v. Oklahoma Board of Corrections, et al., Okl. _____ P.2d _____ (1978), 49 OBJ 2436. The Wiseman v. Board of Corrections decision presently pends on rehearing. However regardless of eventual outcome, the case illustrates the constitutional consequences collaterally arising from legislation which is neither a Article V, Section 56 nor Article V, Section 57 bill. The purpose of the divided appropriations scheme dictated by Article V, Section 56 and Article V, Section 57 in the legislative process should be readily apparent. The 56 general appropriations bill should be, relatively speaking, an uncontroversial provision. Since by law it cannot contain "anything new" appropriating money only for already approved programs and functions of government, there is little potential for contention. Thus, the funding of day to day governmental services is insulated from the more serious debates of the Legislature naturally arising over new appropriations, programs or laws of a general non-appropriative nature. Additionally, the individual legislator's vote is not held captive by reason of the inclusion in overall agency appropriations of new matters. The legislator is free to exercise discretion as to the merits of proposals without being placed in the position of having to vote against appropriations for existing programs in order to register disapproval of new programs. This office is not unmindful of the consequences of our conclusions reached in this opinion. Related opinions o f this office under No. 79-313 reveal HB 1140 is not a unique enactment. Many millions of dollars have been paid out of the State Treasury in reliance upon appropriation bills not materially distinguishable from HB 1140. No question should arise, however, as to the legality of expenditures or encumbrances of state funds in reliance upon HB 1140 or similar appropriations bills. As stated by the Oklahoma Supreme Court in Wade v. Board of County Commissioners of Harman County, 161 Okl. 245, 17 P.2d 690 (1933): "The general rule is that laws are presumed to be constitutional, and ministerial officers may safely rely thereon and follow them until they are held unconstitutional, or until such officers are advised by the proper officers that they are unconstitutional." See also, Gordon v. Conners, 183 Okl. 82,80 P.2d 322 (1938); Board of Commissioners of Pottawotamie County v. A. C. Davis and Sons, 184 Okl. 258, 86 P.2d 782
(1939). No reason appears why the rule above quoted should not apply to these appropriations bills. Funds expended or encumbered for expenditure pursuant to HB 1140 are not adversely affected by the constitutional invalidity of the appropriation as determined in this opinion. A similar resolution is applicable to appropriations bills not materially distinguishable from HB 1140. It is, therefore, the official opinion of the Attorney General that: 1. By reason of the requirements of Article V, Section 56 and Article V, Section 57, Okla. Const., appropriations for the expenses of the executive, legislative and judicial departments of government must be contained in a single general appropriations bill which may not contain any other appropriations or general legislation. All other appropriations or general laws except those lawfully encompassed within the general appropriations bill must be by separate bill embracing but one subject. 3. HB 1140 First Regular Session of the Thirty-seventh Legislature, Laws 1979, c. 282, codified in part as 74 O.S. 285 [74-285](46) (1979) is unconstitutional as said bill appropriates money in a separate bill for the expenses of an agency of the executive department which can only be provided for in the general appropriations bill specified in Article V, Section 56, Okla. Const. 4. Funds expended or encumbered for expenditure pursuant to appropriations made in HB 1140 are not invalidated by reason of the unconstitutionality of said bill as public officers may rely on the presumed constitutionality of a law until such law is judicially declared unconstitutional or until advised by proper officer of the unconstitutionality of the law. (JOHN F. PERCIVAL) (ksg)