Glen D. JOHNSON, Speaker of the House of Representatives, and Robert V. Cullison, President Pro Tempore of the Senate, Petitioners,

v.

David WALTERS, Governor et al., Respondents.

No. 77919.

Supreme Court of Oklahoma.

Oct. 29, 1991.

Susan Brimer Loving, Atty. Gen. by Neal Leader, Asst. Atty. Gen., Oklahoma City, for respondents.

Lindil C. Fowler, Jr., and Lu Willis, Oklahoma Corp. Com'n, Oklahoma City, for respondent Oklahoma Corp. Com'n.

Charles Nesbitt, Cabinet Secretary of Energy, State of Okl., Michael L. Harris, Deputy Secretary of Energy, Oklahoma City, for amicus curiae Charles Nesbitt.

Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks by Gene Stipe, Oklahoma City, for amicus curiae Kiamichi Development Authority.

HODGES, Vice Chief Justice.

On the last day of the 1991 regular session of the Oklahoma Legislature, the House of Representatives and the Senate passed enrolled House Bill 1743 (H.B. 1743) and presented it to Governor David Walters. The first two sections of the bill empowered the Legislature to allocate space in the State Capitol Building and relocate various officials. The bill's third section authorized the sale of surplus water from Sardis Reservoir.

The Governor claimed the bill embraced two separate subjects in violation of the constitutional prohibition against multiple subjects in general legislation (non-appropriation) bills. Rather than vetoing all of the bill, the Governor treated each subject as a separate bill and approved only the third section dealing with Sardis Reservoir.

Also, on the last day of the session, the House and Senate passed enrolled House Bill 1271 (H.B. 1271). That bill was a budget reconciliation measure with a seven-page title and 157 sections requiring over 80 pages of text.

Claiming that this bill embraced general legislation provisions covering multiple subjects, along with appropriations, the Governor vetoed several general legislation sections. These vetoed provisions included sales tax exemptions, restrictions on the use of private prisons, and limits on the personnel powers of the Oklahoma Corporation Commission. In addition, several appropriation sections were vetoed.

Jones, Givens, Gotcher & Bogan by Graydon Dean Luthey, Jr., Tulsa, Scott Emerson, Chief Counsel, Oklahoma House of Representatives, Mark Ramsey, Counsel, Oklahoma Senate, Oklahoma City, for petitioners.

In this original proceeding, the Speaker of the House of Representatives and the President Pro Tempore of the Senate (the Legislature) claim the Governor's partial veto of the two bills was beyond his constitutional authority. A writ of prohibition to respondent agencies, boards, commissions, and officers is sought to prevent implementation of all general legislation provisions of both bills. The Attorney General's office and the Oklahoma Corporation Commission have filed response briefs. Amicus curiae briefs have been filed by the Governor's Secretary of Energy and the Kiamichi Development Authority. The Legislature has responded to the amicus curiae brief of the Secretary of Energy.

At issue, is the scope of the Governor's constitutionally conferred veto power. Because this is a matter of great public concern, jurisdiction is assumed. *See Phillips v. Oklahoma Tax Comm'n,* 577 P.2d 1278 (Okla.1978).

## THE GOVERNOR'S VETO POWERS

The Governor's veto powers are described in sections 11 and 12 of article VI of the Oklahoma Constitution.[1] These sections were construed in *State ex rel. Wise-man v. Oklahoma Board of Corrections,* 614 P.2d 551 (Okla.1978).

*Wiseman* held that section 11 applies to general legislation bills and bills containing only one item of appropriation. *Id.* at 555. The Governor must approve or disapprove these bills in toto. *See id.* Any attempt to qualify the approval is null and the bill does not become law. It is as if the Governor had exercised a "pocket veto."

*Wiseman* further held that section 12 operates as an exception to section 11 for bills "making appropriations of money embracing distinct items." *Id.* at 556 (quoting section 12). Section 12 grants the Governor the power to line item veto any distinct item of appropriation, provided the item is rejected in toto. *Id.* at 555–56.

The problem addressed in *Wiseman* was which section applied when the Governor was presented a bill containing both general legislative provisions and appropriations of money embracing distinct items. There, the Governor attempted to exercise a subject veto over a general legislation provision.

The *Wiseman* Court held that section 11 applied to the general legislation provisions of the bill and section 12 applied to the provisions making appropriations of money

1. Section 11 provides:

Every bill which shall have passed the Senate and House of Representatives, and every resolution requiring the assent of both branches of the Legislature, shall, before it becomes a law, be presented to the Governor; if he approve, he shall sign it; if not, he shall return it with his objections to the house in which it shall have originated, who shall enter the objections at large in the Journal and proceed to reconsider it. If, after such reconsideration, two-thirds of the members elected to that house shall agree to pass the bill or joint resolution, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered; and, if approved by two-thirds of the members elected to that house, it shall become a law, notwithstanding the objections of the Governor. In all such cases, the vote in both houses shall be determined by yeas and nays, and the names of the members voting shall be entered on the Journal of each house respectively. If any bill or resolution shall not be returned by the Governor within five days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the Legislature shall, by their adjournment, prevent its return, in which case it shall not become a law without the approval of the Governor. No bill shall become a law after the final adjournment of the Legislature, unless approved by the Governor within fifteen days after such adjournment.

Section 12 requires:

Every bill passed by the Legislature, making appropriations of money embracing distinct items, shall, before it becomes a law, be presented to the Governor; if he disapproves the bill, or any item, or appropriation therein contained, he shall communicate such disapproval, with his reasons therefor, to the house in which the bill shall have originated, but all items not disapproved shall have the force and effect of law according to the original provisions of the bill. Any item or items so disapproved shall be void, unless repassed by a two-thirds vote, according to the rules and limitations prescribed in the preceding section in reference to other bills: Provided, That this section shall not relieve emergency bills of the requirement of the three-fourths vote.

embracing distinct items. The result was that all the general legislative provisions failed to become law for lack of gubernatorial approval. The appropriation provisions, however, did not need specific approval from the Governor and became law. *Id.* at 556–57.

In this dispute, the Legislature has petitioned arguing that the Governor's line item veto power extends only to appropriations and not to general legislation provisions. By way of defense, the respondent Governor claims the bills violated the one-subject requirement found in sections 56 and 57 of article V of the Oklahoma Constitution.[2] He asserts that he should, therefore, be able to divide each bill into separate subjects for him to approve or to veto.

The Governor urges this dispute presents an issue of first impression because the *Wiseman* Court did not address "whether there was a connection between the one-subject provision ... and the Governor's veto powers." However, a review of the decision and the briefs of the parties in *Wiseman* reveals that a one-subject violation argument was raised. The decision notes that following the application of sections 11 and 12, no issue of one-subject compliance remained because only the appropriation provisions were enacted into law. 614 P.2d at 557. Thus, the *Wiseman* Court impliedly rejected the approach of applying the one-subject rule before addressing the Governor's veto powers under sections 11 and 12 of article VI. Today, however, *Wiseman's* continued viability must be reassessed in light of the Legisla-

ture's flagrant violations of the one-subject rule along with the purposes and history of that rule.

While sections 11 and 12 of article VI limit the Governor's veto power, the one-subject rule limits the Legislature's ability to circumvent that power. "The purpose of the constitutional requirement that but a single subject be included in a legislative bill is to make impossible by log-rolling devices the enactment of unpopular legislation by including it with popular legislation on an entirely different subject." *Bond v. Phelps*, 200 Okla. 70, 82, 191 P.2d 938, 950 (1948). In addition to the prevention of such omnibus legislation, the rule is also aimed at the undesirable legislative practice of attaching a rider to a bill in order to "veto-proof" the measure. It was intended to "prevent matters foreign to the main objects of a bill from finding their way into such enactment surreptitiously." *In re County Comm'rs*, 22 Okla. 435, 438, 98 P. 557, 558 (1908).

These objectionable legislative practices are not new and are not unique to Oklahoma. By the end of the nineteenth century, the one-subject rule had become widely accepted. *See* note, *Enforcing the One-Subject rule: The Case for a Subject Veto*, 38 Hastings L.J. 563, 565 (1987). Most states presently have some form of the rule in their constitution. During the same time, the gubernatorial veto power also gained wide acceptance as a limitation on legislative power. *Id.* at 569.

In theory, the one-subject rule should deter log rolling and other veto-proofing

---

2. Section 56 applies to general appropriation bills and provides:

> The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the State, and for interest on the public debt. The salary of no officer or employee of the State, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary, shall have been already provided for by law. All other appropriations shall be made by separate bills, each embracing but one subject.

Section 56 operates as an exception to the following provision found in section 57:

> Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriations bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length; Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof.

attempts. In practice, however, these constitutional violations continue to circumvent the governor's veto power, as demonstrated by the two bills examined here.

■ Even a cursory examination of the bills reveals that they combine general legislation provisions which bear no relationship to each other. For example, H.B. 1271 includes the unrelated topics of state employee benefits, coal-fired electric generating plants, the indigent defense system, state travel reimbursement, and officer verification of traffic citations. Such a blatant violation of the one-subject rule cannot be justified by petitioners' assertion that each provision relates to "state government."

■ *Wiseman* refused to recognize the constitutional limits placed on the Legislature by the one-subject rule before addressing the Governor's veto powers. Constitutional compliance, however, is required not only from the Governor but from the Legislature as well. The shortcoming of the *Wiseman* approach was that it did not adequately remedy the Legislature's continuing practices of log rolling and other attempts at veto-proofing bills. A new approach is required.

■ The approach suggested by the Governor would allow him to treat each subject in a multi-subject bill as a separate enactment. However, no provision in the Oklahoma Constitution grants that power. Thus, the Governor's attempt at a partial veto in this matter exceeded his constitutional authority. His suggested approach must therefore be rejected.

Under section 57 of article V, general legislation bills and special appropriation bills are limited to one subject. Section 56 requires a general appropriation bill to embrace nothing but appropriations. These rules limit legislative power and obviously were intended to bind the Legislature. However, it must also be understood that:

> while engaged in considering bills which have passed both houses of the Legislature, and which are presented to him for approval or disapproval, the Governor is acting in a legislative capacity and not as

an executive; that while exercising this function the Governor is a special agent, with powers limited by the Constitution, and he can only act in the specified mode, and can exercise only the granted powers; if he attempts to exercise them in a different mode, or to exercise powers not given, his act will be wholly ineffectual for any and every purpose.

*Peebly v. Childers,* 95 Okla. 40, 42, 217 P. 1049, 1051 (1923). Thus, the Governor is also bound by the one-subject rule while acting as a special agent with the limited powers found in sections 11 and 12 of article VI. Therefore, the Governor must enforce the one-subject rule only in a manner consistent with his limited veto powers.

The bills presented to the Governor by the Legislature clearly violated the one-subject rule. H.B. 1271 is a general appropriation bill with general legislation provisions rolled into it. Section 56 requires that "[t]he general appropriation bill shall embrace nothing but appropriations." The bill also impermissibly combined unrelated topics of general legislation in contravention of the section 57 mandate that "[e]very act of the legislature shall embrace but one subject." H.B. 1743 also violated section 57 by combining unrelated general legislation subjects.

■ These violations of sections 56 and 57 would have required the Governor to treat both bills as unconstitutional under the approach adopted today. However, the Legislature's possible reliance on *Wiseman* must be acknowledged. Because *Wiseman* was the applicable approach at the time these bills were presented to the Governor, today's decision will be given only prospective effect. Therefore, *Wiseman* will be applied to this dispute.

## APPLICATION OF *WISEMAN* TO H.B. 1743

■ H.B. 1743 contained three sections. Two of the sections dealt with space allocation in the State Capitol Building. These were the object of the Governor's veto.

The third section authorized the Oklahoma Water Resources Board to sell sur-

plus water from Sardis Reservoir. The section further provided that $3,000,000.00 of the proceeds would be used to develop the Kiamichi River with the remainder to be deposited into the Statewide Water Development Revolving Fund. The Governor approved of this third section of the bill.

The parties agree that all three sections of the bill were general legislation.[3] Applying the *Wiseman* decision, section 11 of article VI requires that general legislation bills be vetoed or approved in toto. Thus, this Governor's attempt to exercise a partial veto was ineffectual. Under *Wiseman*, "[a] qualified approval is tantamount to a 'pocket veto' and the bill does not become law." 614 P.2d at 555. Therefore, no part of H.B. 1743 became law.

### APPLICATION OF *WISEMAN* TO H.B. 1271

The same conclusion cannot be reached with regard to H.B. 1271. That bill contained general legislation provisions and appropriations. The Governor disapproved some of both the general legislation provisions and the appropriation items.

■ Following *Wiseman*, the general legislation provisions are controlled by section 11 of article VI and the appropriations of money embracing distinct items are controlled by section 12. *Id.* at 556. Therefore, as with H.B. 1743, all general legislation provisions of H.B. 1271 failed to become law by virtue of the Governor's attempt at partial approval. But a different result applies to the appropriations.

■ Section 12 specifically grants the Governor the power to line-item veto provisions making appropriations of money embracing distinct items. He exercised this power by disapproving some of the appropriation sections of H.B. 1271. These vetoed provisions did not become law. The Governor did not veto the remaining appropriation items. Thus, the non-vetoed appropriation items have the force and effect of law because they need no specific ap-

proval from the Governor. *See Wiseman*, 614 P.2d at 557.

### CONCLUSION

To summarize, no part of H.B. 1743 became law. All the general legislation provisions of H.B. 1271 also failed to become law. The appropriation sections of H.B. 1271 became law except for those items of appropriation disapproved by the Governor.

Respondents are hereby prohibited from implementing any part of H.B. 1743. They are further prohibited from implementing any part of H.B. 1271 except for those items of appropriation not disapproved by the Governor.

*Wiseman* failed to adequately curb log rolling and other legislative attempts at veto-proofing bills. It is therefore overruled. That decision was applied to this dispute only because the new approach announced today is to be given prospective effect. In the future, however, when the Governor is presented a bill which violates the one-subject rule, he is required to treat the bill as unconstitutional.

APPLICATION TO ASSUME ORIGINAL JURISDICTION GRANTED; PETITION FOR WRIT OF PROHIBITION GRANTED.

DOOLIN, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, C.J., and LAVENDER and HARGRAVE, JJ., concur in part and dissent in part.

SIMMS, J., disqualified.

ALMA WILSON, concurring:

I concur in today's mandate that future legislation shall strictly comply with the constitution's one-subject rule. The provisions of the Oklahoma Constitution, Article V, §§ 56 and 57 are plain, self-executing restrictions upon the legislative powers of the Legislature and the Governor. With respect to future legislation, prudence dictates the narrow positions set out in today's opinion: 1) If the Legislature

---

**3.** This consensus among the parties makes it is unnecessary to address the argument of amicus, Kiamichi Development Authority, that section 3 of H.B. 1743 was an appropriation provision.

presents a multi-subject bill to the Governor, it has violated art. V, § 57; and, 2) If the Legislature presents a bill to the Governor which makes appropriations to all three branches of government and includes substantive law provisions, it has violated art. V, §§ 56 and 57. I applaud our strict application of art. V, §§ 56 and 57, however, I would directly address the issue of whether the Governor's partial approvals of House Bill 1721 and House Bill 1743 exceeded the powers granted in art. VI, §§ 11 and 12.

Today we require the Governor to reject any multi-subject bill. Within this duty is the power to initially determine whether a bill is multi-subject. This duty should include the power to reduce the multi-subjects in a bill to one-subject. In anticipation of the next, imminent controversy, I would hold, therefore, that the grant of legislative power in art. VI, § 11 imposes an implied duty upon the Governor to conform legislation to the self-executing provisions of art. V, §§ 56 and 57. That is, I would vitalize the Governor's role as a legislative safety valve.

The constitutional violations committed in the two legislative measures challenged herein are obvious. The provisions of House Bill 1743 relate to two wholly unrelated subjects: 1) Authority to allocate space in the State Capitol Building; and, 2) Authority to sell water from the Sardis Reservoir for use out of this state. Today, we hold the provisions relating to Sardis, in H.B. 1743, failed with the Governor's rejection of the unrelated provisions. The provisions of H.B. 1721, the budget reconciliation bill, relate to many subjects: 1) Appropriations to all three branches of state government; and, 2) A myriad of subjects for which general provisions of law are legislated. Today, we uphold only the appropriations in H.B. 1721, not line-item vetoed.

These results are fashioned in light of *Wiseman v. Oklahoma Board of Corrections*, 614 P.2d 551 (Okla.1978). Today's opinion notes reliance upon *Wiseman*, as argued by the parties. *Wiseman* interpreted the veto powers in art. VI, §§ 11 and 12. *Wiseman* involved a legislative bill making appropriations for the corrections system and legislating substantive law relating to corrections. Neither H.B. 1721 nor H.B. 1743 is similar to the bill involved in the *Wiseman* controversy. I find no legal support in *Wiseman* for H.B. 1721 nor H.B. 1743 as presented to the Governor for his approval or rejection. I remain committed to my dissenting vote in *Wiseman*, a special assignment while I served as district judge. Clearly, the line-item veto power in art. VI, § 12 does not authorize the Governor to line-item veto substantive law provisions in a one-subject bill. I applaud our overruling of *Wiseman* and its fiction that the Governor may treat a single legislative bill as two bills where the bill includes items of appropriations and substantive law provisions.

*Wiseman* did not foreshadow the constitutional violations on the face of H.B. 1721 and H.B. 1743. With this controversy, its facts and circumstances, future controversies can be anticipated. Accordingly, I would prefer that, in this matter, we proceed to construe art. VI, §§ 11 and 12 to require the Governor, when functioning as a legislator, to strictly comply with art. V, §§ 56 and 57.

Imposition of a strict application of art. V, §§ 56 and 57 upon the exercise of all legislative power would confine all those vested with legislative power to the same clear and certain rules. Thus, when, in the future, the Governor is presented with a bill such as H.B. 1743, I would hold that the Governor may approve all provisions within the bill which relate to one subject or that the Governor may reject the multi-subject bill in its entirety.[1]

1. Today we require the Governor to reject, in its entirety, any legislative enactment which violates the one-subject rule. Underlying our ruling, is the implied duty of the Governor to execute his legislative duties consistent with art. V, §§ 56 and 57. The effect of our ruling is that the Legislature's violation of the one-subject rule destroys the Governor's power to approve. The Governor's duty to determine whether a bill is constitutionally impermissible, that is, whether it complies with the one-subject rule, should include the power to approve that part of the bill which is constitutionally permissible; or, to reject those provisions which render the bill

KAUGER, Justice, concurring:

Three wrongs do not make a right: 1) House Bill 1743 (H.B. 1743), a general legislation bill, and House Bill 1271 (H.B. 1271), a multi-subject, general legislation/special appropriations bill, violate art. 5, § 57's [1] proscription against multi-subject bills; 2) The Governor may not usurp the legislative authority of the State specifically reserved to the Legislature by art. 5,

§ 1; [2] and 3) This Court cannot construe the Governor's power [3] in such a way as to give the Governor review authority which is not granted by the constitution, nor can it empower the Legislature to enact multi-subject bills which are expressly forbidden by art. 5, § 57. Assuming arguendo that the multi-subject challenge was not properly raised, or that it was unnecessary to address art. 5, § 57 in *State ex rel. Wiseman v. Oklahoma Bd. of Corrections*, 614

unconstitutional. Such a construction is consistent with the reasoning in our early decisions interpreting the Governor's veto power and with our established rules governing the validity of legislation.

In *Peebly v. Childers,* 95 Okla. 40, 217 P. 1049, 1051 (1923), notwithstanding the separation of powers doctrine, we recognized that the Governor's veto power is a legislative power strictly limited by the Constitution. We said:

(T)hat, while engaged in considering bills which have passed both houses of the Legislature, and which are presented to him for approval or disapproval, the Governor is acting in a legislative capacity and not as an executive; that while exercising this function the Governor is a special agent, with powers limited by the Constitution, he can only act in the specified mode, and can exercise only the granted powers; if he attempts to exercise them in a different mode, or to exercise powers not given, his act will be wholly ineffectual for any and every purpose.

In *Regents of State University v. Trapp,* 28 Okla. 83, 113 P. 910, 913 (1911), we held that the Governor does not have power to line-item veto legislative directions relating to the expenditure of a single item of appropriation. Underlying our holding, we explained that the evil to be prevented is forcing the Governor to destroy good legislation in order to defeat one bad item:

The meaning of the foregoing section [art. VI, § 12] is not obscure, and the object it was intended to accomplish is apparent. Without the provision all bills of whatever character could be approved or disapproved by the Governor only in their entirety. But by section 57, art. 5, general appropriation bills may embrace more than one subject; and, if the veto power were confined to the whole bill, the Governor might often be required to destroy much good legislation in order to defeat one item of a bill that was bad, or, on the other hand, be compelled to approve a piece of legislation vicious in part, in order to obtain the benefits of the salutary provisions of the same act. It was to enable the Governor to approach in a measure the consideration and approval of a bill carrying items of appropriation with the same power that the members of the legislative departments are authorized to act upon it, in that he may consider

and approve some of the items separately, without being required to approve them all.

The Governor's approval power in § 11 is vitiated unless we recognize the implied duty and attendant power of the Governor to conform facially impermissible legislation to the constitution, prior to approval of the enactment. Such a position enforces the self-executing nature of art. V, §§ 56 and 57. *Ex Parte Cain,* 20 Okla. 125, 93 P. 974 (1908) (the validity of these restrictions upon the legislative process without further enactments).

Withholding the Governor's power to approve any part of a multi-subject bill renders the legislative enactment vain and useless. That is, when the Governor reviews a multi-subject bill he is duty-bound to reject the impermissible bill in its entirety as a vain and useless act. When the courts review a multi-subject bill approved by the Governor, the legal presumption that the legislature has not done a vain and useless thing will remain. See, *Farris v. Cannon,* 649 P.2d 529, 531 (Okla.1982), wherein we said that the court is duty-bound to fashion a procedure to effectuate the intent of the legislature based upon the presumption that the legislature is never presumed to have done a vain and useless thing and the authority cited at note 4.

Exercise of the Governor's approval power to remove the constitutionally impermissible portions is consistent with our established rule that only those parts of an act which violate the constitution will be stricken. *Englebrecht v. Day,* 201 Okla. 585, 208 P.2d 538 (1949); *In re Initiative Petition No. 191,* 201 Okla. 459, 207 P.2d 266 (1949). It is also consistent with our general rule that constitutional restrictions or limitations upon the Legislature's authority are to be strictly construed in favor of the validity of the legislative act. See, *Draper v. State,* 621 P.2d 1142, 1146 (Okla.1980), wherein we said:

Restrictions and limitations upon legislative power are to be construed strictly, and are not to be extended to include matters not covered or implied by the language used. (Footnote omitted.)

1. The Okla.Const. art. 5, § 57.

2. The Okla.Const. art. 5, § 1.

3. The Okla.Const. art. 6, § 11; Okla.Const. art. 6, § 12.

P.2d 551, 557 (Okla.1978), it is squarely presented today.[4]

The *Wiseman* approach is valid here solely to the extent that all distinct items of appropriations in H.B. 1271, not line-item vetoed in toto by the Governor, constitute duly enacted appropriations. This result is appropriate only because at the time the Legislature passed H.B. 1271 *Wiseman* was still the law, and we had not foreshadowed the development of the rule of law announced today.[5] Were we to continue to apply *Wiseman's* mechanical approach, the one-subject issue presented by the enactment of a multi-subject, general legislation/special appropriations bill like H.B. 1271 would continue to place the Chief Executive in an untenable position. The Governor would be forced to choose either to approve multi-subject legislation or to reject offensive sections and face the possibility of a legal challenge to the exercise of the veto power. A blind adherence to *Wiseman* would always be outcome determinative—appropriations contained within the hybrid bill would survive the glare of judicial scrutiny only because this Court chose to treat those provisions surviving severance as though they comprised a general appropriations bill. In essence, the Court would continue to exercise a power it today denies the Governor—severance of a bill enacted by the Legislature as one into two pieces of legislation, thereby perpetuating multi-subject hybrid bills. This activism would occur despite the fact that art. 5, § 56 defines a general appropriations bill. A multi-subject, general legislation/special appropriations bill like H.B. 1271 does not meet the definition.[6]

Because H.B. 1743 and H.B. 1271 violate art. 5, § 57's proscription against multi-subject bills, the general legislative provisions contained within the bills are void in their entirety. The Governor may not pick and choose which sections of the bills to approve and which to reject—nor may the Legislature enact multi-subject bills and avoid constitutional challenges by asserting that the Governor has exceeded his/her veto authority. This Court may not confer upon the Governor powers reserved to the Legislature by art. 5, § 1. Pursuant to art. 5, § 57, the Legislature is required to present the Chief Executive with single-subject bills. Likewise, the Governor can exercise only those veto powers conferred by art. 6, §§ 11 and 12.

Despite argument to the contrary, the Legislature's duty to enact single subject bills is not diminished by the last sentence of art. 5, § 57 which provides:

"That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

Art. 5, § 57 was enacted not only to prevent multi-subject or log-rolling legislation, but also to enable the public and the Legislature to understand the scope and effect of pending legislation. Generally, the only notice of pending legislation is a publica-

---

**4.** The Court was not in agreement as to the treatment of the one-subject rule in *State ex rel. Wiseman v. Oklahoma Bd. of Corrections*, 614 P.2d 551, 557 (Okla.1978). In his dissent, Justice Doolin urged the Court to address the character of the multi-subject bill presented. He was joined by Justice Simms and then District Judge Alma Wilson, acting as a Special Justice. They were right. Additionally, it appears from the respondent's brief in response to the petitioner's application to assume original jurisdiction and petition for writ of mandamus in *Wiseman* that the issue of the viability of multi-subject legislation presented to the Governor for approval was specifically presented. The respondents wrote on page 2 of the brief:

"Notwithstanding the question of the validity of the veto of Section 17 of House Bill No. 1567, the respondents contend that a peremptory writ of mandamus should not be issued by this court against them to carry out the terms and provisions of Section 17 of House Bill No. 1567 because such section of House Bill No. 1567 violates Section 10, Article 6, and Sections 56 and 57, Article 5 of the Oklahoma Constitution."

Three pages of the seven page document were devoted to an argument that the various sections of H.B. No. 1567 bore no logical or natural connection with each other.

**5.** See, *United States v. Johnson*, 457 U.S. 537, 549, 102 S.Ct. 2579, 2586–87, 73 L.Ed.2d 202, 213–14 (1982).

**6.** The Okla.Const. art. 5, § 56.

tion of its title.[7] The subject expressed in the title of an act limits its scope.[8] However, every provision of the Constitution is presumed to have a useful purpose and must be given effect.[9] A finding that the final phrase in art. 5, § 57 prohibits the challenge of multi-subject bills so long as all subjects are included in the title of an act would render the first portion of the section nugatory; it would permit log-rolling, and it would vitiate the gubernatorial veto power contained in art. 6, §§ 11 and 12. This we may not do.

Although the powers of the legislative, the executive, and the judicial departments may overlap, neither may exercise the powers specifically granted to the other.[10] The Okla. Const. art. 5, § 1 vests the legislative power in the Senate and the House of Representatives, not in the Legislature and the Governor.[11] The Governor acts in a legislative capacity when reviewing legislation. While exercising this function, the Governor's powers are limited by the constitution. The Chief Executive may exercise only the power specifically granted. Any attempt to exceed authority results in the actions being rendered wholly ineffectual for any and every purpose.[12]

The power of the veto is constitutionally conferred upon the Governor in art. 6, §§ 11 and 12. The approval or veto of general legislation bills is governed by art. 6, § 11. Pursuant to § 11, the Governor has two options, he/she may: 1) approve a bill presented by the Legislature; or 2) return it with objections to the house in which it originated. Section 12 governs general appropriations bills and provides that the Governor may approve or disapprove the bill or any item or appropriation it contains. When presented with a general appropriations bill, the Chief Executive

has a third option—the power to "line item" veto a portion of the bill.[13]

No article or section of the Okla. Const. gives the Governor the power to become a "Super Legislator" by dividing legislation presented by the law-making body into multiple bills in order to avoid the single-subject mandate of art. 5, § 57. This Court held in *Peebly v. Childers*, 95 Okla. 40, 217 P. 1049, 1051 (1923) that if the Chief Executive exercises a power not specifically granted by the constitution while reviewing legislation presented by the Legislature, such actions are wholly ineffectual for any and every purpose. Except to the extent that *Wiseman* controls the appropriations, the Governor's attempt to divide H.B. 1743 and H.B. 1271 was unconstitutional. Failure to recognize these constitutional restrictions would require us to condone actions not authorized by our governing document.

The situation presented here is distinguishable from that the Court was faced with in *State ex rel. Hudson v. Carter*, 167 Okla. 32, 27 P.2d 617, 626 (1933). In *Carter*, the Court was asked to review a general appropriations bill which included a provision which allowed the Governor to alter the amount of an appropriation for the Corporation Commission. In *Carter*, deletion by the Court of one offensive provision left what was intended in the first instance by the Legislature—a general appropriations bill. Striking all general legislative provisions of H.B. 1271 may leave what appears to be a general appropriations bill. The difference between the situation in *Carter* and that presented here is that such action would result in the nature of the bill being altered. What started as a multi-subject, general legislation/special appro-

7. *Stewart v. Oklahoma Tax Comm'n,* 196 Okla. 675, 168 P.2d 125, 128 (1946); *John Deere Plow Co. v. Owens,* 194 Okla. 96, 147 P.2d 149, 152 (1943).

8. *Safeco Ins Co. v. Sanders,* 803 P.2d 688, 692 (Okla.1990); *Oklahoma City v. Brient,* 189 Okla. 163, 114 P.2d 459–60 (1941).

9. *Darnell v. Chrysler Corp.,* 687 P.2d 132, 134 (Okla.1984); *Cowart v. Piper Aircraft Corp.,* 665 P.2d 315, 317 (Okla.1983).

10. *Peebly v. Childers,* 95 Okla. 40, 217 P. 1049, 1051 (1923); Okla.Const. art. 3, § 1.

11. *Carter v. Rathburn,* 85 Okla. 251, 209 P. 944, 946 (1922).

12. *Peebly v. Childers,* see note 10, supra.

13. *Regents v. Trapp,* 28 Okla. 83, 113 P. 910–11 (1911).

priations bill would be converted to a general appropriations bill. Such a metamorphosis is not supported by this Court's ruling in *Carter* or by the constitution.

Our pronouncement in *State ex rel. Crable v. Carter*, 187 Okla. 421, 103 P.2d 518, 521 (1940) is helpful in two respects: 1) it adds support to the conclusion that the Governor may exercise only those powers specifically granted in the Constitution when reviewing legislation; and 2) it provides support for the proposition that we are without authority to confer legislative review authority upon the Governor not found in our constitutional framework. In *Crable*, the Court had before it legislation presented to the Governor which included a provision empowering the Governor to reduce an item in an appropriation bill. The Court recognized the fundamental concept of separation of powers in *Crable*, as well as the limits which the constitution imposes on the Chief Executive when reviewing legislation.

We held in *Crable* that an attempt by the Legislature to enlarge the exercise of the Chief Executive's veto power or to change the specific mode or manner of its exercise was void. The holding was promulgated despite the belief that a different result might be desirable. We said in *Crable:*

"... (T)he courts must scrupulously maintain the powers delegated to the legislative and executive branches of government, but at the same time must as carefully maintain the constitutional restrictions imposed upon the exercise of those powers, for herein lies the safeguard of representative government...."

The result we reach today may or may not be the least disruptive for state government. However, the failure to conform with constitutional mandates evidenced in this case imperils one of the most basic safeguards of representative government—three independent branches of government

operating within the parameters of the constitution.

Perhaps John Adams, one of the founding fathers, writing in defense of the British soldiers in the Boston Massacre Trials said it best:

"Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence." [14]

Nor may this Court alter the fact that the Okla. Const. neither empowers the Legislature to pass multi-subject bills nor does it provide the Governor with the authority to divide legislation presented as one bill into multiple acts. The Chief Executive may not assume legislative functions [15] and treat a single bill duly passed by the Legislature as two or more pieces of legislation. The Legislature's authority to enact bills is restricted by art. 5, § 57's proscription against multi-subject bills. The judiciary as the arbiter of the constitutionality of legislative enactments [16] may not ignore a legislative enactment properly challenged. However, in addressing the challenge, we cannot anoint the Governor with the power to exercise review authority not granted by the constitution.

I write separately not only to express my full concurrence, but to address questions raised by the other writings filed in this cause. The majority opinion should not be read as indicating that the Governor may exercise authority not found within the bounds of the constitution. The Chief Executive may not divide legislation properly presented as one bill into multiple enactments in order to satisfy art. 5, § 57's proscription against multi-subject bills. The views expressed by the majority create no "mega-veto" power in the Governor or superintending control in this Court. However, should the Governor choose to sign a multi-subject bill presented by the Legislature, the enactment would stand as law until properly challenged. Art. 6, § 11 and

---

**14.** J. Adams, Argument in Defense of the [British] Soldiers in the Boston Massacre Trials [December 1770].

**15.** *Carter v. Rathburn,* see note 11, supra. Okla. Const. art. 5, § 1.

**16.** *Dow Jones & Co. v. State ex rel. Oklahoma Tax Comm'n,* 787 P.2d 843, 845 (Okla.1990).

§ 12 provide that the Governor shall return a vetoed bill to the house in which it originated along with his/her objections. Neither section places any restriction upon the Governor's reason for rejecting a bill. Nor do §§ 11 and 12 require that the Legislature meet any standard for override other than a two-thirds vote. Our pronouncement today cannot be read to empower the Governor as a super-legislator or to restrict the Legislature's authority to override a gubernatorial veto.

LAVENDER, Justice, concurring in part; dissenting in part.

I concur in the result of the ultimate holdings of the majority as to the fate of H.B. 1743, i.e. no part of it became law and the fate of H.B. 1271, i.e. *only* distinct items of appropriations *not* disapproved by the Governor became law. I also concur in that part of the opinion that holds the Governor does not possess a line item veto over parts of general legislation presented to him in one bill, whether containing one constitutional subject or more than one. I, however, cannot agree with much of the rationale of the majority, nor its overruling of *State ex rel. Wiseman v. Oklahoma Board of Corrections*, 614 P.2d 551 (Okla. 1978).

The majority applies to H.B. 1743 (a bill it assumes contains nothing but general legislation) part of the *Wiseman* decision that recognizes a general legislation bill *must* be vetoed or approved *in toto* pursuant to the mandate of OKLA. CONST. art. 6, § 11. In that the Governor purported to veto the first two sections of the bill, but not the third, none of the bill became law. Although the majority completely overrules *Wiseman* they admit it accurately described the limits of the veto powers of the Governor under § 11 when presented a bill containing only general legislation. In other words, the Governor *does not* have *any* line item veto power under § 11. 614 P.2d at 555. The majority continues to adhere to this view in the instant case. Thus, I fail to see why anything in regard to the controversy involving H.B. 1743 requires overruling *Wiseman* as to its analysis of § 11 when that case correctly determined

the Governor does not have line item veto power under § 11 when presented with a bill containing only general legislation, *something the majority admits is a correct exposition of the law.*

The majority, however, as I read the opinion, determines in part they must overrule *Wiseman* because it somehow decided we would *never* rule on a one-subject violation argument made pursuant to either OKLA. CONST. art. 5, § 57 or the last sentence of OKLA. CONST. art. 5, § 56 prior to addressing the Governor's veto powers. We neither expressly or impliedly (as the majority says) so ruled. Although one-subject arguments based on both §§ 56 and 57 were made in *Wiseman* we did not reach them because of no necessity to do so, as was clearly explained. We said:

> Respondent argues that sec. 17 of HB 1567 bears no legitimate connection with or natural relation to the appropriations made by HB 1567, or for that matter, any of the general legislation sections of the bill. Respondent contends sec. 17 is invalid under the one subject standard set forth in sections 56 and 57 of Art. V, Okl.Const. In view of our reaching the conclusion heretofore set forth *and for the further reason neither party contends the remainder of HB 1567 is unconstitutional, we will not consider or determine whether HB 1567 contravenes sections 56 and 57, supra. See Schwartz v. Diehl,* Okl., 568 P.2d 280 (1977), wherein we said that Courts will pass upon the constitutionality of a statute only when it is necessary to a determination of the merits of the case. (emphasis added)

614 P.2d at 557.

As can be seen from the emphasized portion of the quote, neither party in *Wiseman* claimed any of the items of appropriation contained in H.B. 1567 were unconstitutional. Nothing else could be meant by the words "the remainder of HB 1567" because after we decided none of the general legislation sections became law because of the improper attempt to exercise a line item veto in contravention of § 11, nothing remained of the bill except the

appropriation sections. Thus, in my view, it was not error to determine there was no necessity to decide the one-subject issue because no party to the action claimed the appropriation sections were rendered unconstitutional thereby. If we would have decided the issue it would have been on our own, with no insistence from either party, something I believe is contrary to well-settled constitutional jurisprudence expressed in *Wiseman*, that courts should normally pass on "the constitutionality of a statute only when it is necessary to a determination of the merits of the case". *Id.* at 557. This determination in *Wiseman* is surely not, as the majority says, an implied ruling we will *never* reach a one-subject issue in a case that involves the Governor's veto powers. It is exactly what the majority in *Wiseman* said it was, a determination there was no necessity to decide the one-subject issue to rule on the merits of the case.

The majority also says we must overrule *Wiseman* because it "failed to adequately curb logrolling and other legislative attempts at veto-proofing bills". I simply do not understand such logic. As noted above, *Wiseman* properly did not decide a constitutional issue because there was no necessity to decide it *in that particular case*. In other words, we had no occasion there to contend with the one-subject mandate of §§ 56 and 57 or the issue of logrolling. Very simply, nothing in that case cried out for this Court to expound on its views concerning logrolling or veto-proofing of bills, when it was not necessary to deal with these issues and, as noted, under well-recognized constitutional jurispru-

dence would have been improper for us to do so. I am unfamiliar with the doctrine espoused by the majority, that a case admittedly decided correctly by this Court on the merits is subject to being overruled because it went no farther to decide a constitutional issue concerning remaining legislation which no party to the case claimed was unconstitutional.

In regard to H.B. 1743, in that no part of the bill became law because of the improper attempt of the Governor to veto a part of the bill, we also have no occasion here to decide the constitutionality of that bill. This, however, does not mean we condone legislative logrolling or we would not condemn it in a proper case or controversy. Had the Governor approved the entire bill we surely could have grappled with the one-subject issue in a case brought by an aggrieved agency that was unsatisfied by the space allocation provisions of sections one and two thereof. Further, application of *Wiseman* to H.B. 1743, gives little solace to those in favor of legislative logrolling. Under that case no part of the bill becomes law, even though approved by both houses of the legislative branch of government. Assuming it had become law by the Governor's approval and someone successfully challenged the enactment, surely one proper remedy under OKLA. CONST. art. 5, § 57, would be to strike down the entire enactment as unconstitutional, the same result reached under the teaching of *Wiseman*.

While I may agree with the majority the bills before us are multi-subject and violate the one-subject rule of OKLA.CONST. art. 5, § 57,[1] we should only be deciding the

1. H.B. 1743 contains three sections. The first two involve space allocation in the State Capitol Building and the third, a multi-million dollar sale of water from the Sardis Reservoir. H.B. 1271 is what I would call omnibus legislation, which contains many varied and seemingly unrelated general legislation provisions and appropriations and increases or decreases in appropriations to various state agencies in all three branches of government, i.e. legislative, executive and judicial. The legislative leadership apparently argues the bills are not multi-subject because each deal with state government. The argument has been squarely rejected by the California Supreme Court under a similar one-sub-

ject mandate. *See Harbor v. Deukmejian*, 43 Cal.3d 1078, 240 Cal.Rptr. 569, 581–583, 742 P.2d 1290, 1302–1304 (1987) (the multi-subject rule obviously forbids joining disparate provisions which appear germane only to topics of excessive generality such as government, public welfare or fiscal affairs). Although this Court has proceeded cautiously when faced with a multi-subject challenge [*See e.g. Rupe v. Shaw*, 286 P.2d 1094, 1098–1101 (Okla.1955) (legislation is not multi-subject merely because it contains many details as long as the details are incidental to accomplishing the general object of the enactment) ], I certainly have found no

issue when it is determinative of the outcome of the case. To dispose of the Attorney General's argument supporting line item veto power for the Governor when he is presented with multi-subject general legislation requires us to only *assume* the bills are multi-subject.

It is also my view the majority is led to the mistaken view *Wiseman* must be overruled because it gives much too much emphasis to the relationship between the one-subject rule and the Governor's veto power. I do not deny there is a practical relationship between the one-subject rule and the Governor's veto power. *See Harbor v. Deukmejian,* 43 Cal.3d 1078, 240 Cal.Rptr. 569, 578, 742 P.2d 1290, 1299 (1987). However, our cases have made it quite clear the primary purpose of the prohibition against multi-subject bills is to prevent legislative logrolling, i.e. putting legislators in a position of having to vote for one bill which contains more than one constitutional subject for the purpose of garnering the necessary *legislative* votes for the various subjects, when one or more of the subjects which constitutionally should have been placed in separate bills, could not alone garner the necessary votes for passage by the legislative branch of government. We said this succinctly as early as 1908 in *In Re County Com'rs,* 22 Okla. 435, 98 P. 557, 558 (1908):

> The abuses which called [§ 57] into existence are clearly understood, and are twofold. Each subject brought into the deliberation of the legislative department of the government is to be voted on

singly, without having associated with it any other measure to give it strength. Experience had shown that measures having no common purpose, and each wanting sufficient support on its merits to secure its enactment, have been carried through legislative bodies and enacted into laws, when neither measure could command or merit the approval of a majority of that body.[2]

To me, it would, thus, be inappropriate to definitively determine the multi-subject question based on the supposed relationship between the one-subject mandate of § 57 and the Governor's veto power.

Disposition as to H.B. 1271 also does not require the overruling of *Wiseman* because contrary to the majority's application of *Wiseman* to that bill, that case does not control the disposition here under the majority's own interpretation of the nature of the bill. The majority says "H.B. 1271 is a general appropriation bill with general legislation provisions rolled into it". Assuming the bill is what the majority says it is, disposition here is settled by other prior case law. Although the result here would be the same as in *Wiseman,* a different analysis would be appropriate. The appropriate analysis would not, however, approximate the result the majority says they will follow in the future, i.e. the entire enactment would be rendered unconstitutional and is required to be treated as such by the Governor.[3]

In *State v. Carter,* 167 Okla. 32, 27 P.2d 617 (1933), we were faced with a situation

---

precedential case remotely supporting the leadership's argument.

**2.** The second abuse concerned the mandate of OKLA.CONST. art. 5, § 57, that the subject of the bill pending in the legislative body be clearly expressed in its title so that matters foreign to the main objects of a bill would not find their way into an enactment surreptitiously. *In re County Com'rs,* 22 Okla. 435, 98 P. 557, 558 (1908). Although there is potentially overlap in regard to the two abuses no party here claims as to either bill the title did not adequately express the contents of the bills.

**3.** The last sentence of the majority opinion provides, "[i]n the future, however, when the Governor is presented a bill which violates the one-subject rule, he is required to treat the bill as

unconstitutional". To be very frank, I do not understand what this sentence means. The Governor always has the option of "treating" a bill presented to him as unconstitutional. However, under the Oklahoma Constitution *if he does not desire the bill to become law,* he must exercise his veto powers either positively or by his inaction, *in conformity with our Constitution,* i.e. OKLA.CONST. art 6, §§ 11–12. As I have previously stated, if a bill does become a law, in a proper case where all requirements for judicial review are satisfied (e.g. standing, ripeness, etc.), the Governor, like anyone else aggrieved by it, could bring a challenge to the constitutionality of the provision or a part thereof and final review would be available in this Court.

where the general appropriation bill was deemed by us to contain general legislation. We did not there find it necessary to determine the entire enactment was unconstitutional as the majority will apparently do in the future. We upheld the appropriation at issue even though we held general legislation in the bill was invalid because OKLA.CONST. art. 5, § 56 positively and unambiguously prohibits general legislation in the general appropriation bill. *Id.* 27 P.2d at 624–625, 627. We upheld the appropriation because we were able to determine that without the general legislation the appropriation at issue was separate and distinct from the general legislation provision so that it was clear or could be presumed, the Legislature would have enacted it anyway had it known the general legislation was invalid because improperly contained in the bill in violation of § 56.[4] *Id.* at 627. Thus, assuming the majority is correct H.B. 1271 is a general appropriation bill with general legislation rolled into it, the appropriations are valid if it is clear or if it can be presumed the Legislature would

have passed the appropriations anyway had it known the unrelated general legislation contained therein was invalid. From my review of the bill and, in fact, from the express position of the legislative leadership they have no desire here to challenge the validity of the appropriations not disapproved by the Governor, I would have little problem presuming the appropriations not so disapproved would have been enacted by the Legislature and are valid.[5]

For the reasons stated herein, I concur in part and dissent in part.

I am authorized to state Chief Justice OPALA and Justice HARGRAVE join in the views herein expressed.

OPALA, Chief Justice, with whom HARGRAVE, Justice, joins, concurring in part and dissenting in part.

This case is not about constitutional testing of the provisions in HB 1743 and HB 1271 but about the outer reach of the executive veto[1] over the numerous sections in

---

4. OKLA.CONST. art. 5, § 57 expressly provides that general appropriation bills *are not* subject to its one-subject mandate.

5. If the majority is incorrect and H.B. 1271 is not a general appropriation bill with general legislation rolled into it, but is instead some type of special or hybrid appropriation bill with general legislation in it, *Wiseman* accomplishes the same practical result as to the general legislation, i.e. those provisions never became valid law. As to the appropriations therein not disapproved by the Governor they would then appear to violate the last sentence of § 56, which provides that all other appropriations than those contained in the general appropriation bill, must be made by separate bills, each embracing one subject. Although no party specifically relies on the last sentence of OKLA.CONST. art. 5, § 56, to argue the unconstitutionality of the entirety of H.B. 1271, the Oklahoma Corporation Commission, a party respondent hereto, alternatively claims *the bill in its entirety is unconstitutional* for violating the one-subject mandate of OKLA.CONST. art. 5, § 57. Thus, unlike in *Wiseman,* the occasion would exist to determine the fate of the remaining portions of the bill, i.e. the appropriation sections. Only then would it be necessary to decide whether our decision should be given prospective application because of some perceived reliance on *Wiseman* or for some other appropriate reason, such as the possible destructive effect the ruling would have on the fiscal affairs of the agencies involved, should it be definitively determined

the appropriation sections violated the Constitution. I would not, however, be inclined to overrule *Wiseman* in any event because the appropriation sections of the bill involved there bear little resemblance to the appropriation sections of H.B. 1271. The appropriations in *Wiseman* all concerned the Oklahoma Department of Corrections, one agency of state government, and I do not see said sections as violating the last sentence of § 56. *See Draper v. State,* 621 P.2d 1142, 1145–1146 (Okla.1980) (OKLA.CONST. art. 5, § 56 does not mandate a general appropriation bill and Legislature is not prohibited from enacting a separate appropriation bill for a single agency for one fiscal year). I would also not be inclined to overrule *Wiseman* even if we had determined there a violation of the one-subject mandate of OKLA.CONST. art. 5, § 57 occurred by reason of appropriations for a single department (a legislative option expressly approved of in *Draper*) being combined with unrelated general legislation also involving the Department of Corrections, because an analysis under *State v. Carter,* 167 Okla. 32, 27 P.2d 617 (1933), would seemingly have resulted in validation of the appropriations under a presumption the Legislature would have enacted the appropriations anyway had it known the general legislation in the bill was invalid.

1. "Veto" is "[t]he refusal of assent by the executive officer whose assent is necessary to perfect a law which has been passed by the legislative body, and the message which is usually sent to

these two bills.[2] The proceeding came to us *before the acts became law.*[3] The legislative leaders who brought it seek our *declaration of how much in the affected legislation has survived the Governor's veto to become effective as law.*

The court pronounces today that the Governor *must* declare a legislative act void whenever it contains an improper combination of subjects in violation of Art. 5 §§ 56 and 57, Okl.Const.[4] The opinion relieves the Governor of the *obligation to accept as valid* all legislative enactments presented for his approval.[5] Giving prospective effect to its opinion, the court holds that the efficacy of the two bills must be measured by the standards announced in *State ex rel. Wiseman v. Oklahoma Board of Corrections.*[6] *Wiseman* teaches that the Governor's constitutional veto power must be exercised in conformity to the provisions of Art. 6 §§ 11 and 12, Okl. Const.[7]

such body by the executive, stating such refusal and the reasons therefor. A refusal by the president or a governor to sign into law a bill that has been passed by a legislature." Black's Law Dictionary, 5th Ed. at 1403.

2. We are not called upon to conduct an inquiry into the acts' constitutionality. Our concern should be solely with the legal effect of the Chief Executive's veto, which is the last step in the process of transforming legislative enactments into law.

3. Pending our disposition of the case we suspended the effectiveness of "the non-appropriation (substantive-law)" portions of the bill by order of August 29, 1991, with Doolin, J., dissenting and Simms, J., disqualified.

4. The provisions of Art. 5 § 56, Okl.Const., are: "The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the State, and for interest on the public debt. The salary of no officer or employee of the State, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary, shall have been already provided for by law. *All other appropriations shall be made by separate bills, each embracing but one subject.*" (Emphasis added.)
The terms of Art. 5 § 57, Okl.Const., provide: "Every act of the Legislature *shall embrace but one subject,* which shall be clearly expressed in its title, *except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes;* and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: *Provided, That if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof.*" (Emphasis added.)

5. Although the Governor is *always* free to exercise his veto powers over bills presented for his approval, *whether they be infirm or valid,* a legislative enactment is presumed valid until a sentence of nullity has been pronounced by a court of competent jurisdiction. That legal presumption attaches even in the judicial process of litigation. *Dow Jones & Co. v. State ex rel. Tax Com'n,* Okl., 787 P.2d 843, 845 (1990).

6. Okl., 614 P.2d 551 (1978).

7. The terms of Art. 6 § 11, Okl.Const., provide in pertinent part:
"Every bill which shall have passed the Senate and House of Representatives, and every resolution requiring the assent of both branches of the Legislature, shall, *before it becomes a law,* be presented to the Governor; *if he approve, he shall sign it;* if not, *he shall return it with his objections to the house in which it shall have originated,* who shall enter the objections at large in the Journal and proceed to reconsider it. If, after such reconsideration, two-thirds of the members elected to that house shall agree to pass the bill or joint resolution, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered; and, if approved by two-thirds of the members elected to that house, it shall become a law, notwithstanding the objections of the Governor.... If any bill or resolution shall not be returned by the Governor within five days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the Legislature shall, by their adjournment, prevent its return, in which case it shall not become a law without the approval of the Governor. No bill shall become a law after the final adjournment of the Legislature, unless approved by the Governor within fifteen days after such adjournment." (Emphasis added.)
The terms of Art. 6 § 12, Okl.Const., are:
"Every bill passed by the Legislature, making appropriations of money embracing distinct items, shall, *before it becomes a law,* be presented to the Governor; if he disapproves the bill, or any item, or appropriation therein contained, he shall communicate such disapproval, with his reasons therefor, to the house

I concur (a) in the ultimate disposition made by the court of HB 1743 and HB 1271 [8] and (b) in that part of the opinion which holds the Governor may not exercise line-item veto over any part of general legislation presented to him in one bill, whether the act contain one or multiple subjects. I must recede from that part of today's pronouncement which (1) overrules *Wiseman* and (2) *requires* the Governor to exercise the constitutional veto power whenever he "finds" that the act presented for his approval violates the § 56's and § 57's prohibition (a) against combining impermissible multiple subjects within a single bill or (b) against including within one bill appropriations intermixed with purely legislative provisions.[9] My own analysis counsels that the Governor's fundamental-law privilege to veto bills, when viewed in conjunction with the provisions of §§ 56 and 57, *does not require* a pre-approval testing of legislation for its conformity to the constitution. No institution of government is burdened with a constitutional scrutiny of *enacted statutory law* except a court responding to a challenge and acting in a proper case or controversy.[10] When presented with a bill the Governor *need do no more than exercise or decline to exercise the veto* power conferred on that office by Art. 6 §§ 11, 12, *supra.* The Chief Executive may either (a) find the law, whether perceived *infirm or not, so unacceptable* as to veto it in a manner consistent with his constitutional authority or (b) approve the law and, if dubious of its constitutional validity, let the

courts ultimately decide—in a proper case or controversy—whether the approved legislation may pass constitutional muster. *The Governor's §§ 11 and 12 veto power does not include a duty to give a declaratory judgment upon an act's constitutional validity.*

## I

### THE RULE ANNOUNCED TODAY EITHER GIVES THE GOVERNOR *OVERRIDE–PROOF MEGA–VETO* [11] POWER OR CREATES A BLUEPRINT FOR IMPERMISSIBLE CHILLING OF OVERRIDE EFFORTS

#### A

A legislative bill that comes to the Governor for approval is not law but rather documented legislative action which the Governor can either transform into or prevent from becoming law. The executive approval or disapproval of enacted legislation is the last stage in the lawmaking process.[12] What of a bill's content survives the Governor's veto and hence emerges as effective law must be measured by the outer limit of the Governor's authority conferred by the provisions of §§ 11 and 12.[13]

Like other officials, the Chief Executive must rely on a judicial decision [14] to treat a bill as constitutionally infirm for an impermissible combination of subjects in violation of Art. 5 §§ 56 and 57.[15] Neither the Governor, nor any other executive official,

in which the bill shall have originated, but all items not disapproved shall have the force and effect of law according to the original provisions of the bill. Any item or items so disapproved shall be void, unless repassed by a two-thirds vote, according to the rules and limitations prescribed in the preceding section in reference to other bills: Provided, That this section shall not relieve emergency bills of the requirement of the three-fourths vote." (Emphasis added.)

8. Under today's disposition, no part of HB 1743 becomes law; and as for the provisions of HB 1271, *only* distinct items of appropriation not disapproved by the Governor survive as law.

9. *See supra* note 4 for the pertinent provisions of Art. 5 §§ 56 and 57, Okl.Const. Some multi-subject bills are permitted under § 57—"general

appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes. . . ."

10. Dow Jones & Co. v. State ex rel. Tax Com'n, *supra* note 5 at 845.

11. For a definition of "mega veto" see text at Part I(B) *infra.*

12. *See supra* note 1.

13. *See supra* note 7 for the pertinent provisions of §§ 11 and 12.

14. *Dow Jones & Co. v. State ex rel. Tax Com'n, supra* note 5 at 845.

15. *Supra* note 4.

may *in advance of a judicial declaration* condemn any legislation for constitutional nonconformity of any nature. The terms of §§ 56 and 57, which prohibit certain multi-subject bills, are *self-executing only* in the sense that they are effective without statutory implementation.[16] They *may not be accepted as self-executing* in the sense that their text authorizes nonjudicial officers to pronounce a sentence of nullity upon a bill that is perceived to contain an improper combination of several subjects.

### B

Today the Governor is required to treat as void all constitutionally objectionable multi-subject legislation. *This authority may be described as a new form of "mega-veto". Mega veto is one fortified by a message whose terms raise a judicially mandated constitutional cloud that makes the flaw appear irremovable and override futile*[17]—*a form of interbranch posturing accomplished by the threat of* *unfavorable court review.* This court should neither sanction nor inspire this practice. Constitutional blackmail is every bit as odious as log rolling,[18] which the court condemns today.

Today's judicial cure for what is perceived as an impermissible legislative game of veto-proofing *cum* log rolling is clearly without any textual warrant. Its antecedents cannot be found in extant constitutional jurisprudence of this State.[19] Legislative enactments have never been subject to an executive declaration of nullity other than through the exercise of the Governor's veto power in conformity to the standards of §§ 11 and 12.

### II

### IN PRE–ENACTMENT STAGES THE GOVERNOR HAS NO STANDING TO ASSERT A CONSTITUTIONAL INFIRMITY

Standing, the legal right of a person to challenge the conduct of another in a judi-

16. A constitutional provision is *self-executing* "when it can be given effect without the aid of legislation and there is nothing to indicate that legislation is contemplated to render it operative, and when there is a manifest intention that it should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed." *Latting v. Cordell,* Okl., 197 Okl. 369, 172 P.2d 397, 399 (1946).

17. This is so because a Governor's veto with a judicially instigated constitutional blast would tend equally to trump a vetoed bill as well as its override. The legislative override provisions are found in Art. 6 § 11, Okl.Const., which provides in pertinent part:

"* * * If, after such reconsideration [by the house in which the act shall have originated], two-thirds of the members elected to that house shall agree to pass the bill or joint resolution, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered; and, if approved by two-thirds of the members elected to that house, it shall become a law, notwithstanding the objections of the Governor.... If any bill or resolution shall not be returned by the Governor within five days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the Legislature shall, by their adjournment, prevent its return, in which case it shall not become a law without the approval of the Governor. No

bill shall become a law after the final adjournment of the Legislature, unless approved by the Governor within fifteen days after such adjournment." (Emphasis added.)

18. Log rolling is defined as a "legislative practice of embracing in one bill several distinct matters, none of which, perhaps could singly obtain the assent of the legislature, and then procuring its passage by a combination of the minorities in favor of each of the measures into a majority that will adopt them all. Practice of including in one statute or constitutional amendment more than one proposition, inducing voters to vote for all, notwithstanding they might not have voted for all if amendments or statutes had been submitted separately." Black's Law Dictionary, 5th Ed at 849.

19. I can find no prior Oklahoma decisions in which this court teaches that legislation is *facially void* for an impermissible combination of subjects proscribed by Art. 5 § 57, Okl.Const., *supra* note 4; nor have I been able to identify any extant authority for the doctrine that under § 56 a bill that combines legislation with special appropriations is *patently void.* The text of § 57 makes only that content of a bill void which is not embraced in its title. At a maximum, an act that combines discrete subjects in violation of § 57 would *only be voidable.* When an act is voidable but not void, it continues in its effect *until a contrary judicial ruling is made.* *H.J. Jeffries Truck Line v. Grisham,* Okl., 397 P.2d 637, 642 (1964).

cial forum,[20] may be raised at any level of the judicial process or by the court on its own motion.[21] Standing must be predicated on interest that is "direct, immediate and substantial."[22] The concept of standing focuses on whether the party invoking the court's jurisdiction has a legally cognizable interest in the outcome of the controversy.[23] A party seeking relief must show actual or threatened injury of some kind.[24] The inquiry is whether the party has in fact suffered injury to a legally protected interest within the contemplation of statutory or constitutional provisions.[25]

In pre-enactment stages the Governor has no standing to challenge a bill for constitutional infirmity. No one can be adversely affected by legislation until it has been applied or enforced as effective law. No showing of actual or threatened injury can be made before the bill becomes effective law. In short, only a person against whom effective law *has been applied* would have standing to challenge its constitutionality.

Moreover, we do not decide constitutional issues in advance of necessity. Today's opinion offends the time-honored "prudential rule of strict necessity"[26] because it allows constitutional challenges to legislation before it becomes law. Where there is no forensic scenario in the context of which challenged law is to be enforced, courts will not assess the attacked norm's constitutional soundness *in vacuo*.

### III

### A

## THE GOVERNOR HAS NO POWER OF JUDICIAL REVIEW

The judicial test of a bill's nonconformity to the constitution cannot precede but must follow the bill's conversion into effective law by the Governor's approval. *This does not occur when the Governor receives the bill.* Today's pronouncement requires the Governor to make a constitutional decision and to veto legislation perceived as an impermissible multi-subject bill. Neither the Chief Executive nor any administrative agency has the power to probe into the law for its constitutional orthodoxy.[27] In our tripartite system of government fundamental-law scrutiny lies within the exclusive domain of the judiciary. Judicial probing must (a) take place in an adversary posture and (b) be triggered by one with standing to challenge infirm legislation.

If the provisions of HB 1271 and HB 1743 were to be tendered today for a test of their conformity to our fundamental law, the attempt would fail. The Governor, as well as the agency heads who are respondents here, would at this stage lack standing, either as so-called Hohfeldian or non-

**20.** *State ex rel. Cartwright v. Okl. Tax Com'n,* Okl., 653 P.2d 1230, 1232 (1982); *Matter of Adoption of Baby Boy D,* Okl., 742 P.2d 1059, 1062 (1985).

**21.** *Matter of Estate of Doan,* Okl., 727 P.2d 574, 576 n. 3 (1986).

**22.** *Underside v. Lathrop,* Okl., 645 P.2d 514, 517 (1982); *Democratic Party of Oklahoma v. Estep,* Okl., 652 P.2d 271, 274 n. 13 (1982); *Matter of Estate of Doan, supra* note 21 at 576.

**23.** *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *Flast v. Cohen,* 392 U.S. 83, 100, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968); *Application of State ex rel. Dept. of Transp.,* Okl., 646 P.2d 605, 609 (1982).

**24.** *O'Shea v. Littleton,* 414 U.S. 488, 493–494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

**25.** *Matter of Adoption of Baby Boy D, supra* note 20 at 1062; *Independent School Dist. No. 9 v. Glass,* Okl., 639 P.2d 1233, 1237 (1982).

**26.** The prudential rule of strict necessity, adhered to today by *all* state and federal courts, holds that constitutional issues must not be resolved in advance of strict necessity. *In re Initiative Petition No. 347 State Question No. 639,* Okl., 813 P.2d 1019, 1037 (1991) (Opala, C.J., concurring); *Smith v. Westinghouse Elec. Corp.,* Okl., 732 P.2d 466, 467 n. 3 (1987); *I.N.S. v. Chadha,* 462 U.S. 919, 937, 103 S.Ct. 2764, 2776, 77 L.Ed.2d 317 (1983); *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *see also Schwartz v. Diehl,* Okl., 568 P.2d 280, 283 (1977); *Dablemont v. State, Department of Public Safety,* Okl., 543 P.2d 563, 564–565 (1975).

**27.** *Dow Jones & Co. v. State ex rel. Tax Com'n, supra* note 5 at 845.

Hohfeldian plaintiffs,[28] to challenge the acts on grounds of multiplicity of subjects. If, before exercising veto power, the Governor were indeed required to test legislative law for its conformity to the constitution, his authority would exceed that which is textually demonstrable by the content of Art. 6 §§ 11 and 12. Nay, the Chief Executive would be invested with responsibility for statutory nullification whose breadth the judiciary could never claim for itself. *In short, no part of HB 1271 and HB 1743 can stand here under an adversary fundamental-law scrutiny. This is so because none of the parties has standing to invoke constitutional review of the acts' contents. Only the efficacy of the veto's outer reach is tendered today for our legal assessment.*

**B**

TODAY'S PRONOUNCEMENT, WHICH IMPOSES JUDICIAL DUTIES UPON THE EXECUTIVE SERVICE, ABROGATES THE GOVERNOR'S DISCRETIONARY POWER TO APPROVE LEGISLATIVE LAW AND HENCE VIOLATES ART. 4 § 1, OKL. CONST.[29]

The court's imposition of constitutional review responsibility upon the Governor and its abrogation of the Chief Executive's discretionary power to approve or reject legislative action clearly offend the separation-of-powers doctrine enjoined on this government by Art. 4 § 1, Okl.Const.[30] That section, which expressly establishes a tripartite division of government functions, is offended whenever one governmental branch is allowed to usurp powers expressly delegated to another.

Just as Art. 4 § 1 interdicts legislative imposition of nonjudicial duties on judges,[31] it also forbids the Supreme Court from saddling the Governor with nonexecutive functions. If judges are indeed constitutionally protected from being burdened with nonjudicial duties, Executive Department officials must be equally shielded from both legislative and judicial imposition of nonexecutive tasks.

**SUMMARY**

The Governor's power over legislation is circumscribed by the constitution. He cannot expand his veto power at the expense of either the legislature or the judiciary. When an infirm multi-subject bill is presented for his approval, he must decide whether to veto or approve it, and then let the courts decide whether the approved act may pass constitutional muster. When a bill is presented for the Governor's approval he bears no duty to probe into its provisions for conformity to our constitution.

The court's final product today marks the birth of an extra-constitutional megaveto. I recede from its opinion by announcing my continued commitment to the tradi-

---

**28.** Non–Hohfeldian plaintiffs are persons whose interest tendered for judicial vindication is neither personal nor proprietary. *Flast v. Cohen, supra* note 23, 392 U.S. at 119 n. 5, 88 S.Ct. at 1962 n. 5 (Harlan, J., dissenting); *Oklahoma City News Broadcasters Ass'n v. Nigh,* Okl., 683 P.2d 72, 78 n. 2 (1984) (Opala, J., concurring in result).

**29.** The terms of Art. 4 § 1, Okl.Const., are: "The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

**30.** A tripartite division of government is not explicitly mandated by the U.S. Constitution;

our fundamental law, Art. 4 § 1, Okl.Const., *supra* note 29, expressly and inflexibly commands that the functions of government be divided into three departments. *Sterling Refining Co. v. Walker,* 165 Okl. 45, 25 P.2d 312, 318 (1933).

**31.** Art. 4 § 1, Okl. Const., *supra* note 29; *see also* In Re: Approval of Rules Mandated by the Dispute Resolution Act, 12 O.S.Supp.1985 §§ 1801 et seq., 57 OBJ 876 (April 8, 1986) (Opala, J., not participating), where this court approved rules and regulations for mediation services authorized by the Dispute Resolution Act. That act placed the management of mediation services in the Judicial Department; *State v. Lynch,* Okl., 796 P.2d 1150, 1165, 1166–1167 (1990) (Opala, V.C.J., concurring in part and dissenting in part).

tional precept that fundamental-law testing is to be confined within judicial institutions, there to be processed only when a proper case or controversy is presented. If legislative enthusiasm for strict compliance with the standards of §§ 56 and 57 is not presently evident, it is primarily because this court's extant post-statehood jurisprudence has not seen fit to direct that, upon the penalty of judicial invalidation, bills conform to the standards of those sections. This is the first case announcing mandatory compliance with all the §§ 56 and 57 strictures. Like Rip Van Winkle, the court suddenly awakens from a very long sleep to realize that the parameters of these two sections are critical and should be predictably enforceable in the courts. While I salute today's effort, I cannot condone the legal framework in which it is accomplished. The job of enforcing the §§ 56 and 57 strictures should be left to the orderly process of post-enactment litigation. The Chief Executive should not be saddled with the job this court has been slow to do since the birth of our commonwealth.